SANDERS, Justice.
We granted certiorari in this mortgage foreclosure to review the judgment of the Court of Appeal, holding that the 1968 note and mortgage of Thrift Funds Canal, Inc., the foreclosing creditor, primed a 1966 note and mortgage of First National Life In *578 surance Company.[1] We affirm the judgment.
On February 14, 1963, First National Life Insurance Company loaned Leroy M. Foy $10,000.00. Foy executed a mortgage note payable to First National in the amount of the loan, bearing 6% per annum interest from date and payable in monthly installments of $84.39. The note was paraphed for identification with a real estate mortgage describing the note and securing it. The mortgage was duly recorded on February 18, 1963. Foy made payments on the mortgage note and, by December 20, 1966, had reduced the principal to $8,227.83.[2]
On that date, Foy obtained a second loan from First National. He gave a promissory note for $3,000.00, payable in 120 monthly amortized installments of $33.31 each. On its face, the note appears to be unsecured, but on the back is the following inscription signed by Foy and his wife:
“This note is secured by a mortgage executed under date of 2-14-63 together with the said mortgage note. It being understood that the mortgage and note shall remain in full force and effect as collateral security to this note.”
On December 19, 1968, Foy gave a second mortgage on the same property to Thrift Funds Canal, Inc. securing a note in excess of $16,000.00. This mortgage was recorded on December 27, 1968.
Thrift Funds brought foreclosure proceedings against Foy on its 1968 mortgage note. Thus, at the time of foreclosure, the court was required to evaluate-three alleged incumbrances:
(1) The 1963 $10,000.00 note in favor of First National secured by a recorded mortgage, on which there was a balance due of $6,736.92;
(2) The 1966 $3,000.00 note in favor of First National allegedly secured by the 1963 mortgage, on which there was a balance due of $2,368.83; and
(3) The 1968 $16,000.00 note in favor of Thrift Funds secured by a recorded mortgage, on which there was a balance due of $13,000.00
The question presented is whether Thrift Funds’ second mortgage primes First National’s 1966 note as secured by the earlier mortgage. The resolution of this question has important implications for the law of security devices.
In Louisiana, a conventional mortgage is an accessory security device. LSA-C.C. Art. 3284; Louis Werner Saw Mill Co. v. White, 205 La. 242, 17 So.2d 264 (1944); Blappert v. Succession of Welsch, 192 La. 173, 187 So. 281 (1939). It is *580 founded upon a principal debt, which it secures, and when the principal debt is extinguished, the mortgage disappears. LSA-C.C. Arts. 3285, 3411(4); Lacoste v. Hickey, 203 La. 794, 14 So.2d 639 (1943); Rhys v. Moody, 163 La. 1039, 113 So. 367 (1927).
Despite the accessory principle, however, Article 3292 of the Louisiana Civil Code authorizes a mortgage to secure a future debt. This provision enhances the commercial utility of the mortgage as a security device.
For analysis, conventional mortgages may be divided into three classes: (1) a mortgage for a specific debt, (2) a mortgage for future advances, and (3) a collateral mortgage.
A mortgage for a specific debt is a mortgage given to secure a particular, existing debt. See Lacoste v. Hickey, supra.
A mortgage for future advances is a mortgage given to secure a debt not yet in existence. See LSA-C.C. Arts. 3292, 3293.
A collateral mortgage is a mortgage designed, not to directly secure an existing debt, but to secure a mortgage note pledged as collateral security for a debt or a succession of debts. The mortgage is usually drawn in favor of future holders, represented by a nominal mortgagee. For convenience in pledging, the companion promissory note is usually payable to bearer on demand. The maker may reissue the note from time to time. See LSA-R.S. 7:9; Li Rocchi v. Keen, 242 La. 111, 134 So.2d 893 (1961); Mente & Co. v. Levy, 160 La. 496, 107 So. 318 (1926); Odom v. Cherokee Homes, Inc., La.App., 165 So.2d 855 (1964), cert. den. 246 La. 867, 167 So.2d 677; Woodward, Louisiana Notarial Manual, § 5.11, p. 132; § 5.25, pp. 151-156 (1953); 25 La.L.Rev. 789, 792-793 (1965).
First National relies upon its 1963 first mortgage to secure the later note executed by LeRoy Michael Foy. The mortgage recites that Foy is indebted to First National in the sum of $10,000.00, which First National has “this day loaned” to mortgagor; that mortgagor has given a specially described $10,000.00 note to First National; and that to secure the payment of the “above described note,” Foy mortgages certain property “in favor of First National Life Insurance Company, and to enure to the use and benefit of any and all future holders of said note.” The mortgage is accepted by First National Life Insurance. The record reflects that First National advanced to the debtor the full amount stipulated contemporaneously with the execution of the mortgage.
Clearly, the mortgage cannot be classified as a collateral mortgage. It evidences and directly secures an existing debt, a money loan, and possesses none of the foi'mal characteristics of a collateral mortgage.
*582 First National contends, however, that specific language in the mortgage broadens it into a mortgage for future advances, relying especially upon the following default clause:
“[I]n any of said events, the said mortgage note, or notes, in principal and interest, avd all other indebtedness secured hereby shall, at the option of the holder of said mortgage notes, immediately become due and payable, anything to the contrary notwithstanding, and it shall be lawful for, and the mortgagor herein does hereby authorize the mortgagee or any future holder of the mortgage note, or notes, to cause all and singular the property hereinabove described, to be seized and sold under executory process issued by any competent court with or without appraisement, at the option of the mortgagee or any future holder or holders of the within described mortgage note, to the highest bidder for cash, the said mortgagor hereby confessing judgment in favor of said mortgagee or any future holder of the mortgage note or notes, for the full amount thereof, together with all interest, attorney fees, insurance premiums, costs and expenses.” (Italics ours).
Specifically, First National argues that the clause provides for plural notes, indebtedness other than the $10,000.00 loan, and recognizes the rights of future holders.
Although the argument seems plausible upon first impression, it lacks real substance. The language relied upon appears in that portion of the mortgage describing the rights of the mortgagee when default occurs. The alternative language, mortgage note, or notes, was designed to adapt this portion of the mortgage to plural notes-executed with and described in the mortgage. This is evidenced by the specification, the said, that precedes the recital. It must be noted that all portions of the mortgage form have not been adapted to plural notes, but this circumstance .does not bar the above construction.
The phrase any future holder does no more than recognize that the mortgage note may be negotiated and held by someone other than the mortgagee at the time of default.
The phrase other indebtedness secured hereby refers, not to future notes, but to the allowable expense items that may be incurred by the mortgagee in protecting its security: taxes, insurance premiums, and attorney fees. An earlier paragraph in the mortgage makes this construction quite clear. It provides that the mortgage secures “said Note and Attorney fees, taxes and premiums of insurance.”
It is true that, in order to secure a future debt, a mortgage need not express on its face that it is given for future advances. It may be phrased as security for *584 an existing debt, when no debt in fact exists, and yet secure a later debt in accordance with the intention of the parties. Hortman-Salmen Co. v. White, 168 La. 1057, 123 So. 711 (1929); Collins v. His Creditors, 18 La.Ann. 235 (1866); Pickersgill & Co. v. Brown, 7 La.Ann. 297 (1852); 25 La.L.Rev. 789, 791 (1965).
In Hortman-Salem Co. v. White, supra, this Court held:
“It is true that the full amount of the loans was not advanced in money to White by plaintiff in either case at the date of the recordation of the mortgage, although the recorded acts of mortgage state that such advances had been made in fact.
“This is unimportant, however, in our opinion, as it is well settled, as stated in the syllabus of Pickersgill & Co. v. Brown, 7 La.Ann. 297, that: ‘Mortgages, under the hypothecary system of Louisiana, may be given to secure debts having no legal existence at the date of the mortgage. It is not essential, in such a mortgage, even with respect to third persons, that it should express on its face, that it was executed to secure future debts. It may be described as a security for existing debts, and yet used to protect those which, in contemplation of the parties, were to be created at a future time.’ ” [3]
We find nothing in the present record, however, to show that, when the first mortgage was executed, the parties intended that it secure future advances. Quite to the contrary, the record reflects that it was designed only to secure an existing debt, a loan made contemporaneously with the execution of the mortgage.
First National strongly relies upon Pickersgill & Co. v. Brown, supra. That case, however, is inapposite. There, though phrased altogether in terms of an existing debt, the mortgage was actually given partly for an existing debt and partly for later advances. The later advances were in fact made. Since the excess mortgage security had been reserved for future advances and those advances made, the court properly recognized the mortgage as one for future advances.
We conclude that the present mortgage is one for a specific debt.
When the present mortgage is thus construed, the case is reduced to a narrow question of law: After an installment note *586 secured by a mortgage for a specific debt has been partially paid, can the mortgagor by inscription on a later note secure that note by the earlier mortgage to the prejudice of other mortgagees? We think not
After a mortgage note for a specific debt has been paid, the mortgage is extinguished. No later advance on the note can revive the mortgage. LSA-C.C. Arts. 3285, 3411(4); Baton Rouge Wood Products, Inc. v. Ezell, 251 La. 369, 204 So.2d 395 (1967); Lacoste v. Hickey, supra; Mente & Co. v. Levy, 160 La. 496, 107 So. 318 (1926); Hibernia Nat. Bank v. Succession of Gragard, 109 La. 677, 33 So. 728 (1903).
Article 3285 of the Louisiana Civil Code declares:
“ . . . [I]n all cases where the principal debt is extinguished, the mortgage disappears with it.”
When partial payment is made of a mortgage installment note for a specific debt, the payment of the installments extinguishes the note pro tanto. At the same time, the payment reduces the debt burden upon the mortgage. Thereafter, the debt burden cannot be increased to the prejudice of junior mortgages. See LSA-C.C. Art. 3377; Boagni v. Wartelle, 50 La. Ann. 128, 23 So. 206 (1897); Schinkel v. Hanewinkel, 19 La.Ann. 260 (1867); Peopie’s Bank v. Erwin, 5 Cir., 238 F. 791 (1917.) [4]
In the present case, First National received the 1966 note after the balance on the original mortgage note had been reduced to about $8,000.00. The debtor continued his payments thereafter. Under the law, the debtor’s inscription on the new note could effectuate no increase of the debt burden bearing upon the mortgage to the prejudice of other mortgagees. We hold, therefore, as did the Court of Appeal, that the mortgage of Thrift Funds, the foreclosing creditor, primes the 1966 note of First National Life Insurance Company.
For the reasons assigned, the judgment of the Court of Appeal is affirmed; all costs in this Court are taxed against First National Life Insurance Company.
HAMLIN, J., dissents with written reasons.
DIXON, J., dissents with reasons.
SUMMERS, J., dissents.

. 242 So.2d 253 (1971). Writ granted, 257 La. 980, 244 So.2d 855 (1971).

. First National Life Insurance Company Exhibit No. 1, Tr. 93.

. In its decision, the Court of Appeal erroneously relied upon Meta in the earlier case of Walmsley v. Resweber, 105 La. 522, 30 So. 5, On Rehearing (1901). This dicta, that in order for a mortgage to secure a future debt it must be so stipulated in the mortgage, conflicts with the established jurisprudence and is unsound. In Walmsley, the basic question was one of priority as between a “collateral” mortgage and a third person’s mortgage that attached while the collateral mortgage notes were in the hands of the maker, gee Comment, Mortgages to Secure Future Advances, 34 Tul.L.Rev. 800, 809 (1960).

. No question of novation is presented in this case. See LSA-C.C. Arts. 2185, 2195; Levy v. Ford, 41 La.Ami. 873, 6 So. 671 (1889).