341 So.2d 450 (1976)
CAMERON BROWN SOUTH, INC.
v.
EAST GLEN OAKS, INC., et al.
No. 11031.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
*452 John Dale Powers, Michael H. Rubin, Baton Rouge, for plaintiff-appellee, Cameron Brown South, Inc.
John E. Seago, Baton Rouge, for defendants-appellants, East Glen Oaks, Inc. Marshall Smith, III.
James M. Field, Baton Rouge, for Beverly Wright Peak, defendant-appellant.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
CONVINGTON, Judge:
In this action the plaintiff, Cameron Brown South, Inc., sought a deficiency judgment against the maker of a promissory note, East Glen Oaks, Inc., and the two accommodation endorsers on the note, Marshall A. Smith, III and Beverly B. Wright, as solidary obligors. The deficiency judgment action followed an executory proceeding in which the mortgaged property, having been seized and sold with appraisement, failed to bring a sufficient amount to pay off the indebtedness. At the trial on the merits the trial court, finding that the plaintiff was entitled to a deficiency judgment, rendered judgment in favor of the plaintiff and against the defendants in solido for the amount sued upon. The defendants have appealed this deficiency judgment. We affirm.
The record reflects that on October 15, 1974, the plaintiff, Cameron Brown South, Inc., filed an executory proceeding against the defendant, East Glen Oaks, Inc., the maker of a certain "ne varietur" mortgage note which was payable to the order of "itself" and which was endorsed in blank by the maker. The note was also endorsed by the accommodation endorsers. The accommodation endorsers were not sued as party defendants in the executory proceeding. Notice for payment, of the seizure, and to appoint appraisers was served only on the maker-mortgagor, East Glen Oaks, Inc. It is stipulated that no notice was served upon the accommodation endorsers. The executory proceeding was brought to effect a *453 seizure and sale of a certain described tract of land in the Parish of East Baton Rouge, upon which the maker-mortgagor had granted a mortgage to the plaintiff in the amount of $827,600.00 by an Act of Construction Mortgage, which act imported a confession of judgment. The plaintiff presented to the reviewing judge in support of its petition for executory process the original note, a certified copy of the act of mortgage and a certified copy of the corporate resolution. In due course the mortgaged property was seized and sold with appraisement.
One of the contentions of the appellants is that the trial judge erred in classifying the mortgage involved in this suit as a "classical collateral mortgage" when the mortgage is a "mortgage to secure future advances." The language the trial judge used in his oral reasons for judgment which forms the basis for the appellants' contention is:
"I equate the construction mortgage as I see it in this case to what I consider to be a classical collateral mortgage."
There are cases where the technical and functional distinctions between the "future advances" mortgage and the "collateral" mortgage might be important, such as ranking of mortgages, E.g., New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252 (La.App. 4 Cir. 1972), writ ref. 262 La. 309, 263 So.2d 47. However, this is not such a case.
This is a suit between the mortgagee and the mortgagor (and the accommodation endorsers). There is no question of a ranking of mortgages before this court or any intervening claims of third persons. This is a confrontation solely between the parties (lender, borrower, endorsers) to the mortgage, by whatever label is pinned upon it. This is an action for a deficiency judgment following a foreclosure on a conventional mortgage.
"The conventional mortgage is a contract, by which a person binds the whole of his property, or a portion of it only, in favor of another, to secure the execution of some engagement, but without divesting himself of the possession." LSA-C.C. art. 3290.
The opinion in Thrift Funds Canal, Inc. v. Foy, 261 La. 573, 260 So.2d 628 (1972), classifies conventional mortgages into three categories:
"(1) a mortgage for a specific debt, (LSA-C.C. arts. 3278, 3290) (2) a mortgage for future advances, (LSA-C.C. arts. 3292, 3293) and (3) a collateral mortgage."
The Supreme Court then defines each category, as follows:
"A mortgage for a specific debt is a mortgage given to secure a particular, existing debt.
"A mortgage for future advances is a mortgage given to secure a debt not yet in existence.
"A collateral mortgage is a mortgage designed, not to directly secure an existing debt, but to secure a mortgage note pledged as collateral security for a debt or a succession of debts. The mortgage is usually drawn in favor of future holders, represented by a nominal mortgagee. For convenience in pledging, the companion promissory note is usually payable to bearer on demand. The maker may reissue the note from time to time."
Since both the future-advances mortgage and the collateral mortgage can be used to secure future advances, there is some confusion between the two mortgages.[1] A pertinent distinction for our *454 purposes is that the future-advances mortgage is made to secure specific future advances while the collateral mortgage is used to secure unspecific future advances. See Nathan and Marshall, The Collateral Mortgage, 33 La.L.Rev. 497, 525-526 (1973).
The mortgage in the instant case is entitled "Construction Mortgage," and contains the following language:
"This note is executed, issued and delivered and the mortgage securing it is given to secure advances to be made in the future to the said maker and mortgagor from time to time for purposes of constructing, erecting, repairing, and/or altering the property described hereinafter, said advances to be made in the future under the provisions of the Louisiana Revised Statutes of 1950, Title 9, Section 4801, as amended."
Nathan and Marshall, op. cit. supra at 524, state:
"The Civil Code expressly authorizes a mortgage to be given for an obligation that is not yet in existence, or in other words, a future obligation, and the Code provides that the rights of the mortgagee are realized only insofar as the promise is carried into effect. (LSA-C.C. arts. 3292, 3293). But, if the parties contemplate future advances, and the future advances are in fact made, then the Code provides that the mortgage has a retroactive effect to the time of the contract. The classic example of the ordinary mortgage to secure future advances is the agreement of a lending institution to advance funds in connection with the construction of a building; for example, homestead A agrees to advance $50,000 for the construction of a house on property belonging to B, where B has entered into a building contract for the construction of the house by contractor C. The building contract provides for stage payments to the contractor, as the slab is poured, the roof constructed, the electrical and plumbing roughed in, and so forth. Homestead a agrees that it will advance the funds and make payments to the contractor as the various stages are met and certified as having been completed. Homestead A may take a mortgage on B's property at the same time that it commits itself to advance funds for the construction of the house. Of course, there is special legislation in addition to the Code to govern such a situation. (LSA-R.S. 6:833, 9:5301-7, 9:4801(c), 3:207). As each stage is completed by contractor C, homestead A advances to him the funds for that stage, and under the provisions of articles 3292 and 3293 of the Civil Code, the advances made by the homestead are secured by the mortgage originally granted and each advance relates back to the original date of the mortgage. This classic example represents a mortgage to secure specific future advances, and under the general rules of mortgages, if the mortgage debt is reduced, the mortgage is reduced pro tanto and cannot be thereafter increased. If the debt is paid off, such a mortgage is extinguished and cannot be revived." (footnotes omitted)
We therefore find that the instant construction mortgage is more properly categorized as a future-advances mortgage, because it is for "specific future advances."
Our conclusion is supported by the recent case of Thrift Funds Canal, Inc. v. Foy, supra. In the Foy case the mortgagor mortgaged his property to First National for a $10,000 loan on February 14, 1963, payable in monthly installments, recorded on February 18, 1963. Foy made payments on the note and, by December 20, 1966, he had reduced the principal to $8,227.83. On that date, Foy obtained a second loan from First National, giving a note for $3,000.00, payable in monthly installments. The note was not paraphed, but on the back it stated:
"This note is secured by a mortgage executed under date of 2-14-63 together with the said mortgage note. It being *455 understood that the mortgage and note shall remain in full force and effect as collateral security to this note."
On December 19, 1968, Foy gave a mortgage on the same property to Thrift Funds, securing a note in excess of $16,000. This mortgage was recorded on December 27, 1968.
In that case the primary issue was whether the Thrift Funds mortgage primed the $3,000 note, which was allegedly secured by the earlier mortgage. The first mortgage recited that Foy was indebted to First National for $10,000, "this day loaned" to mortgagor; that mortgagor gave a note in said amount to mortgagee, secured by a mortgage "in favor of First National Life Insurance Company, and to enure to the use and benefit of any and all future holders of said note." First National advanced to the mortgagor the full amount stipulated contemporaneously with the execution of the mortgage.
The Supreme Court said in Foy that:
"Clearly, the mortgage cannot be classified as a collateral mortgage. It evidences and directly secures an existing debt, a money loan, and possesses none of the formal characteristics of a collateral mortgage." See also Le Van, Security Devices-Collateral Mortgages, 33 La.L.Rev. 228, 229 (1973).
The Court then concluded that the first mortgage was "one for a specific debt." 260 So.2d 632. The Court in effect held that the mortgage in question was an ordinary conventional mortgage, which is made to secure a specific contemporaneous debt and which is identified with that debt, so that when the debt is paid, the mortgage expires. LSA-C.C. art. 3285.
Although the Foy case was concerned with an ordinary conventional mortgage, the rationale of the court in distinguishing the collateral mortgage from the other conventional mortgages is applicable to the instant case.
Perhaps, a further word from Nathan and Marshall, op. cit. supra at 498, will help put mortgages in perspective:
"As its very name implies, the collateral mortgage is not designed directly to secure an existing debt, like the ordinary conventional mortgage, nor necessarily to secure advances to be made, like the mortgage to secure future advances, but instead to create a mortgage note that can be pledged as collateral security for either a pre-existing debt, or for a debt created contemporaneously with the mortgage, or for a future debt or debts, or even for a series of debts."
A collateral mortgage differs from other conventional mortgages in that money is not directly advanced on the promissory note that is paraphed "Ne Varietur" for identification with the act of collateral mortgage, rather this "collateral mortgage package" is pledged to secure an indebtedness that can be one which is pre-existing, contemporaneous or future. The full principal amount of the collateral mortgage note secures the principal and any other indebtedness of the hand note, including interest and attorney's fees. See New Orleans Silversmiths, Inc. v. Toups, supra; Odom v. Cherokee Homes, Inc., 165 So.2d 855 (La.App. 4 Cir. 1964), writ ref. 246 La. 868, 167 So.2d 677; Nathan and Marshall, op. cit. supra; see also Nathan and Marshall, The Collateral Mortgage: A Reassessment and Postscript, 36 La.L.Rev. 973 (1976).
There are two significant characteristics of the collateral mortgage that make it a unique security device, in fact these characteristics are the very essence of its existence:
First, the collateral mortgage note can be issued and reissued and returned to the maker without extinguishing the collateral mortgage.
Second, the collateral mortgage is both a mortgage and a pledge. The collateral mortgage has been described as "the strange alchemy of the pledge of a mortgage created by the pledgor." Sachse, Report to the Louisiana Law Institute on Article Nine of the Uniform Commercial Code, 41 Tul.L.Rev. 785, 799 (1967).
*456 As a corollary, the collateral mortgage note does not represent the indebtedness; it is the security that is pledged to secure another note, usually a hand note, which represents the indebtedness. The true indebtedness is the debt that the collateral mortgage note is pledged to secure. See Nathan and Marshall, op. cit. supra at 505. Nevertheless, for the purposes of executory process, the collateral mortgage note is the "instrument evidencing the obligation secured by the mortgage." Slidell Building Supply, Inc. v. I.D.S. Mortgage Corp., 273 So.2d 343 (La.App. 1 Cir. 1972), writ den. La., 274 So.2d 708 (1973).
Slidell Building Supply was a suit to annul an order of seizure and sale of mortgage property under executory process. The mortgage involved was a collateral mortgage. The mortgagor contended that the hand notes evidenced the actual indebtedness and should have been presented for the purpose of proving the debt, consequently, executory process was improper because the hand notes were not authentic. The Court rejected this contention and held that the collateral mortgage note was "the instrument evidencing the obligation secured by the mortgage" within the meaning of LSA-C.C.P. art. 2635.
In Slidell Building Supply this Court said:
"The very purpose of the collateral mortgage is to avoid the necessity of paraphing the mortgage with each hand note as an advance is made. (There were 164 hand notes in this case.) We hold that the collateral mortgage note is the instrument evidencing the obligation secured by the mortgage." To hold otherwise would have the effect of destroying the utility and usefulness of the collateral mortgage as a security device."
To the same effect is the case of Baton Rouge Bank and Trust Company v. Subco, Inc., 306 So.2d 312, 314 (La.App. 4 Cir. 1974), wherein the court stated:
"A collateral mortgage note is nothing more than evidence of the obligation secured by the mortgage. The evidence of the indebtedness is the hand note for which the collateral mortgage note is security."
We find that the "ne varietur" note and the construction mortgage involved in the instant suit do not possess the vital characteristics necessary to a categorizing of this mortgage as a collateral mortgage. The mortgage note is for specific future advances. Under the general rules of mortgages, if the mortgage debt is reduced, the mortgage debt is reduced pro tanto and cannot thereafter be increased. If the debt is paid off, the mortgage is extinguished, and cannot be revived. The note cannot be reissued. See LSA-C.C. arts. 3285, 3411(4); Thrift Funds Canal, Inc. v. Foy, supra 260 So.2d at 632; Nathan and Marshall, op. cit. supra at 525. Moreover, the record does not reflect that the mortgage note or act of mortgage were pledged to secure any indebtedness, or other act.
We therefore conclude that the instant mortgage is one for specific future advances.
We must now consider the appellants' contention that the deficiency judgment was invalid for the reason that a creditor can not obtain a deficiency judgment unless the property has been sold under executory process after appraisal and unless proper authentic evidence was filed to obtain executory process. LSA-C.C.P. arts. 2771-2772; LSA-R.S. 13:4106-4107; League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (1968).
A deficiency judgment is a judgment in favor of a creditor for the difference between the amount of the indebtedness and the amount derived from the judicial sale held in order to satisfy the indebtedness. Kolb, Deficiency Judgments in Louisiana (Comment), 49 Tul.L.Rev. 1094 (1975).
Under our statutory and jurisprudential law a debtor may oppose the action for deficiency judgment if the secured property was sold without appraisal or if the executory proceedings were fundamentally defective in that proper authentic evidence was lacking. See American Bank and *457 Trust Co. in Monroe v. Carson Homes, Inc., 316 So.2d 732 (La.1975); Reed v. Meaux, 292 So.2d 557 (La.1973); Chrysler Credit Corporation v. Breaux, 293 So.2d 261 (La.App. 1 Cir. 1974), writ den. 294 So.2d 548 (La.); Tapp v. Guaranty Finance Co., 158 So.2d 228 (La.App. 1 Cir. 1963), writ den. 245 La. 640, 160 So.2d 228; Note, Civil Procedure-Deficiency Judgment After Invalid Executory Process, 29 La.L.Rev. 405 (1969).
The record in the instant case reveals that there was in fact an appraisal and, therefore, this defense is not available to appellants herein.
In the Tapp case the plaintiff brought an action to annul a deficiency judgment on the grounds that the note on which executory process was granted was not in authentic form. This Court stated that:
"The executory proceeding was null on its face and the deficiency judgment rendered subsequently and grounded on the null executory proceeding, is likewise null. The Legislature in LSA-R.S. 13:4106 has expressed the strong public policy that deficiency judgments are prohibited except in cases where the sale has been made with legal appraisement. An illegal and null order for executory process cannot serve as the basis for a legal appraisal and sale . . . ."
In League Central Credit Union v. Montgomery, supra, at 207 So.2d 765:
"Our law stipulates the authentic evidence required in order to invoke executory proceedings. C.C.P. Art. 2635. The courts on numerous occasions have held that, without the proper authentic evidence, executory proceedings cannot be had. Miller, Lyon and Co. v. Cappel and Curry, 36 La. Ann. 264; Li Rocchi v. Keen, 242 La. 111, 134 So.2d 893."
Executory process is an accelerated procedure, summary in nature, by which the holder of a mortgage or privilege evidenced by an authentic act importing a confession of judgment seeks to effect an ex parte seizure and sale of the subject property, without previous citation, contradictory hearing or judgment. LSA-C.C.P. arts. 2631 et seq.; see American Bank and Trust Co. in Monroe v. Carson Homes, Inc., supra; McMahon, The Historical Development of Executory Procedure in Louisiana, 32 Tul.L.Rev. 555 (1958).
Because of its summary nature, the law has surrounded executory process with safeguards for the protection of the mortgagor or other debtor. For executory process to issue the trial judge must be convinced that the plaintiff's petition is supported by authentic evidence of (1) the instrument evidencing the obligation; (2) the act of mortgage or privilege importing a confession of judgment; and (3) any other instruments necessary to complete proof of the plaintiff's right to use executory process. LSA-C.C.P. arts. 2635, 2638; Buckner v. Carmack, 272 So.2d 326 (La.1973);American Bank and Trust Co. in Monroe v. Carson Homes, Inc., supra 316 So.2d at 734.
LSA-C.C.P. art. 2635 specifically states (in part):
"This requirement of authentic evidence is relaxed only in those cases, and to the extent, provided by law."
Executory process is a harsh remedy, and can be used only in instances where it is specifically permitted by law. LSA-C.C.P. arts. 2631 et seq. When it is permitted, the party using it must strictly comply with the letter of the law governing this remedy. See Myrtle Grove Packing Company v. Mones, 226 La. 287, 76 So.2d 305 (1954).
Every muniment of title to the promissory note and the mortgage, and every link of evidence must be in "authentic" form. LSA-C.C.P. arts. 2636, 2637; Miller, Lyons & Co. v. Cappel and Curry, 36 La.Ann. 264 (1884). However, an authentic act is not required with regard to the note or other instrument evidencing the obligation secured by a mortgage or privilege because, insofar as such instruments are concerned, they are deemed authentic evidence and self-proving. LSA-C.C.P. art. 2636(1); Official Revision Comment (a) under art. 2636; Louisiana National Bank of Baton Rouge v. Heroman, 280 So.2d 362 (La.App. 1 Cir. 1973), writ den. La., 281 So.2d 755.
*458 Some other instances where the "authentic evidence" requirement is relaxed are listed in LSA-C.C.P. arts. 2636 and 2637. Article 2636 lists certain documentary evidence "deemed to be authentic," such as certified copies of certain instruments; and Article 2637 lists evidence which "need not be authentic," and which may be proved by a verified petition or by affidavit instead of by authentic acts, such as evidence as to proper party defendant and as to the need to appoint an attorney at law to represent an unrepresented defendant.
We have examined the mortgage note and the mortgage involved in the instant case with these rules in mind, and have concluded that no further authentic evidence was needed in order for the plaintiff to use executory proceedings.
In the instant case the mortgage note was made payable to the order of the mortgagor and was endorsed in blank by it, and the mortgage so recited; thus, the law considers it as being payable to "bearer" and transferable by mere delivery. LSA-R.S. 7:9 and 30.
Therefore, the contention of the appellants that proper evidence was not submitted to obtain executory process is not well founded. All of the requirements for executory process on a mortgage note were met in the proceeding involved in the instant suit: there was an act of mortgage in authentic form containing a confession of judgment; there was "bearer" promissory note paraphed "ne varietur" by the notary for identification with the act of mortgage; there was a certified corporate resolution; there was a verified petition proving the non-payment of the obligation in accordance with the terms of the mortgage. It was not necessary for the plaintiff to submit the "loan agreement." The agreement was not made a part of the mortgage; it was merely adopted by reference.
The very purpose of the "future-advances" mortgage is to permit the mortgagor to arrange in advance for a specific sum of money which is to be actually disbursed to the mortgagor periodically at future times, e.g., stage payments to a building contractor without the necessity of making the internal agreements, such as loan agreements, an integral part of the security instrument. We hold that the mortgage note is the "instrument evidencing the obligation secured by the mortgage," thus meeting the requirements of LSA-C.C.P. art. 2635.
Our conclusion is supported by the cases concerned with the use of executory process to enforce collateral mortgages. E.g., Slidell Building Supply, Inc. v. I.D.S. Mortgage Corp., supra; Scarborough v. Duke, 251 So.2d 55 (La.App. 3 Cir. 1971), writ ref. 259 La. 882, 253 So.2d 216.
If the "bearer" collateral mortgage and the authentic act of mortgage adequately satisfy the requirements of executory process in an action to foreclose on a collateral mortgage without production of the hand note which is the evidence of the actual indebtedness, all the more reason for holding that a "loan agreement," which is neither evidence of the indebtedness nor of the obligation secured by the mortgage, is not an instrument necessary to complete proof of plaintiff's right to use executory process in an action to foreclose on a "future-advances" mortgage. See Thrift Funds Canal, Inc. v. Foy, supra; Baton Rouge Bank and Trust Company v. Subco, Inc., supra.
Appellant Wright makes the further contention that no deficiency judgment can be granted against her because she was not made a party defendant nor was she served with notice of the executory proceeding.
This contention has been answered adversely by the courts of this state. See E.g., Ford Motor Credit Company v. Soileau, 323 So.2d 221 (La.App. 3 Cir. 1975); Chrysler Credit Corporation v. Breaux, supra; Polk Chevrolet, Inc. v. Vicaro, 162 So.2d 761 (La.App. 1 Cir. 1964).
In Chrysler Credit Corporation v. Breaux, supra, executory process issued against only the owner of the encumbered property. The seized property was sold with appraisement. *459 The proceeds of the public sale were insufficient to pay off the note. The creditor then sued both the mortgage debtor and the accommodation co-maker for the deficiency. The accommodation co-maker owned no interest in the encumbered property. Nevertheless, the co-maker contended that the Deficiency Judgment Act protected him since he was not sued in the executory process and was not served with notice of the proceedings. In rejecting this contention, this Court recognized that the Deficiency Judgment Act was not designed to protect accommodation parties who have no interest in the mortgaged property.
In the Breaux case, this Court said at 293 So.2d page 266:
". . . (I)f a co-signer or co-maker is not named defendant in the executory proceedings, or if the co-maker or endorser named defendant is not served with notice of payment, notice of seizure or sale, or notice to appoint an appraiser, such is not sufficient grounds to impart invalidity to the executory proceedings precluding the granting of a deficiency judgment against the co-makers or endorsers."
Thus, appellant Wright's contention is without merit.
Appellant Wright has also asserted several other contentions, such as novation, consideration and negotiability. These assertions are patently without merit. The record does not reflect any new transaction between the mortgagor and the mortgagee, but only such draws of the money that were in performance of the construction mortgage. It is elementary that no consideration actually flows to an accommodation endorser. An inspection of the note clearly shows that it is a negotiable instrument.
In the instant case the plaintiff complied in full with the safeguards of the Louisiana Executory Process and the Louisiana Deficiency Judgment Act, and thereby reserved its right to proceed for the deficiency not only against the mortgage debtor, but also against the accommodation endorsers, all of whom are solidarily liable for balance due.
For the foregoing reasons, we affirm the judgment of the trial court at the appellants' costs.
AFFIRMED.
NOTES
[1] Judge Regan (dissenting) in Thrift Funds Canal, Inc. v. Foy, 242 So.2d 253, 257 (La.App. 4 Cir. 1970), calls attention to the fact that:

"The Louisiana mortgage to secure future obligations is commonly referred to by the practitioner as a `collateral mortgage' and takes the form of a notarial act whereby the mortgagor acknowledges an indebtedness for the amount of the mortgage note to future holders."
The Supreme Court granted a writ in the Foy case and affirmed the Court of Appeal (for different reasons), 261 La. 573, 260 So.2d 628 (1972).
See also Nathan and Marshall, The Collateral Mortgage, 33 La.L.Rev. 497 at 498:
". . . (T)he collateral mortgage has been a source of unfortunate confusion and bizarre litigation."