**In the Matter of Danny P. KEATING, Bettie E. Keating,**

v.

**FIRST NATIONAL BANK OF JEFFERSON.**

Civ. A. No. 85–4884.

United States District Court, E.D. Louisiana.

Sept. 19, 1986.

Emile L. Turner, Jr., New Orleans, La., for debtors.

William P. Stahl, Paul S. Hughes, New Orleans, La., for FNJ.

## MEMORANDUM OPINION

MENTZ, District Judge.

This case comes before the Court on appeal from the Bankruptcy Court of the Eastern District of Louisiana. The debtors, Danny and Bettie Keating ("the Keatings"), as well as Keating Air Conditioning, Inc. ("Keating AC") filed for bankruptcy

---

**7.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

under Chapter 11 of the Bankruptcy Code. Subsequently, the debtors challenged the validity of the collateral mortgage sought to be enforced by the First National Bank of Jefferson Parish ("FNJ"). The Bankruptcy Court determined that the security interest held by FNJ was invalid, and that the claim of FNJ was unsecured. After reviewing the memoranda, and considering the oral arguments of counsel, the Court AFFIRMS the Bankruptcy Court's ruling. However, it does so for different reasons. The issue to be decided is whether FNJ's loan to Keating AC is secured by a valid collateral mortgage.

## FACTS

On September 22, 1980, Keating AC attempted to effect a collateral mortgage with the Continental Bank (now FNJ). In connection with this loan, the following five relevant documents were executed:

1. A collateral mortgage by Keating AC, in favor of the Continental Bank (now FNJ), on five pieces of real estate ("the collateral mortgage", P.Ex. 3). The collateral mortgage was signed by 1) Danny P. Keating as president of Keating AC; 2) the Continental Bank; 3) Robert G. Creely, Notary Public; and 4) two witnesses. The five pieces of property were not owned by Keating AC, rather they were owned by the Keatings in their individual capacity.

2. A collateral mortgage note (P.Ex. 4) in the amount of $500,000.00, payable to bearer, with Keating Air Conditioning as maker. The face of the note contains the following language:

"NE VARIETUR" For identification with an act of COLLATERAL MORTGAGE and COLLATERAL CHATTEL MORTGAGE executed before me this 22nd day of September, 1980, [signed], Robert G. Creely, Notary Public.

The reverse side of the collateral mortgage note contains the signatures of Danny P. Keating and Bettie Evans Keating, and identifies their signatures as being made in an individual capacity. Below their signatures, the following language appears:

NE VARIETUR To identify with an Act of Correction Passed before me this 15th day of October, 1980, [signed], Robert G. Creely, Notary Public.

3. A hand note for $330,000.00 (P.Ex. 5), payable to the order of Continental Bank, with Keating AC, Danny P. Keating and Bettie Evans Keating, individually, as the maker.

4. A "Collateral Pledge Agreement" (P.Ex. 7) executed by Keating AC, and accepted by the Continental Bank, containing the following notation:

Secured by the pledge of one (1) certain demand collateral mortgage and collateral chattel mortgage note dated September 22, 1980 in the amount of $500,000.00 payable to "Bearer," executed by Keating Air Conditioning, Inc. paraphed "Ne Varietur" to identify with an act of mortgage passed before Robert G. Creely, Notary Public, on September 22, 1980 in the face amount of $500,000.00.

5. A "Small Business Administration (SBA) Guaranty" (D.Ex. 4) in favor of the Continental Bank for the debts of Bettie Evans Keating and Danny P. Keating. The collateral securing the guaranty included four of the five pieces of property referred to in the collateral mortgage, but not the property located on Stumpf Boulevard, where Keating AC is located.

When FNJ subsequently realized that the property which was the subject of the collateral mortgage was owned by the Keatings individually, FNJ attempted to correct the problem. Thus, on October 15, 1980, an "Act of Correction" (P.Ex. 8) was executed by Keating AC, the Keatings, and the Continental Bank. The Act of Correction stated:

That an error was committed in preparing the aforesaid collateral mortgage in that KEATING AIR CONDITIONING, INC., was identified as the mortgagor when as a matter of fact, the mortgagor should have been BETTIE EVANS, wife of/and DANNY P. KEATING.

That in view of the foregoing and for the same consideration originally recited, the parties have agreed to reform and cor-

rect[1] the collateral mortgage executed on September 22, 1980, to reflect the true owners and mortgagors as BETTIE EVANS, wife of/and DANNY P. KEATING of the following described property, to-wit ...

The effect of the various documents is that on September 22, 1980, FNJ's notary public erroneously executed a collateral mortgage with Keating AC, on property owned individually by the Keatings. Thereafter, FNJ attempted to correct the problem by executing the above mentioned Act of Correction.

In 1983, Keating AC was unable to maintain the mortgage loan payments. Foreclosure proceedings, via executory process, were instituted in Louisiana state court by FNJ. Thereafter, Keating AC, and the Keatings filed for bankruptcy protection.

## ANALYSIS

The Bankruptcy Court found that the security interest held by FNJ was invalid. First, since the security provided to FNJ was not owned by Keating AC, the requisites of Louisiana Civil Code art. 3300 were not met.[2] Additionally, the Bankruptcy Court found that FNJ did not carry the burden of proving by clear and convincing evidence that the Act of Correction reformed the original mortgage, so as to provide for a valid mortgage. Finally, the Bankruptcy Court determined that the Keatings could not be considered to have ratified the acts of Keating AC, since such a finding would require a piercing of the corporate veil, and ignoring the evidence of a valid corporate entity.

■ This Court agrees that the security interest of FNJ is invalid. However, the security is invalid because FNJ failed to obtain a valid pledge agreement from the Keatings which properly pledged their individual assets for the debts of Keating AC.

FNJ concedes that the collateral mortgage is invalid, but argues that the collateral mortgage should be read in conjunction with the Act of Correction, and that together the two documents constitute a valid mortgage.

The Keatings assert that the security interest is invalid for numerous reasons (although fraud is not alleged), as follows:

(1) the Act of Correction was not signed before a notary public;

(2) the Act of Correction was not signed before any witnesses;

(3) the language in the Act of Correction is ambiguous;

(4) the Act of Correction does not contain a phrase paraphing the Act of Correction with the hand note;

(5) the Keatings intended to mortgage only one piece of property, the Stumpf property;

(6) FNJ attempted to add new parties to the Act of Correction; and

(7) FNJ failed to obtain a proper pledge from the Keatings.

The Court finds that no valid mortgage exists, even if the collateral mortgage and Act of Correction are read together, since the collateral mortgage was not properly pledged by the Keatings to secure the hand note. Thus, it is not necessary to rule upon the other alleged defects with FNJ's security interest.

In *First Guaranty Bank v. Alford*, 366 So.2d 1299, 1302 (La.1978), the Louisiana Supreme Court outlined the requirements of a collateral mortgage, as follows:

In addressing the issue presented, a brief review of the character of collateral mortgages will be helpful. A mortgage is an accessory right which is granted to the creditor over the property of another as security for the debt. La.Civ.Code arts. 3278, 3284. Mortgages are of three

---

**1.** A strong contention was made that the words "and do by these presents reform and correct" were omitted, as evidence of the inarticulate manner in which these documents were confected.

**2.** La.Civil Code art. 3300 provides as follows:
Conventional mortgages can only be agreed to by those who have the power of alienating the property which they subject to them.

types: conventional, legal and judicial. La.Civ.Code art. 3286. Within the area of conventional mortgages, three different forms of mortgages are recognized by the Louisiana statutes and jurisprudence: an "ordinary mortgage" (La.Civ. Code arts. 3278, 3290); a mortgage to secure future advances (La.Civ.Code arts. 3292, 3293); and a collateral mortgage. *See Thrift Funds Canal, Inc. v. Foy,* 261 La. 573, 260 So.2d 628 (1972). Unlike the other two forms of conventional mortgages, a collateral mortgage is not a "pure" mortgage; rather, it is the result of judicial recognition that one can pledge a note secured by a mortgage and use this pledge to secure yet another debt.

A collateral mortgage indirectly secures a debt via a pledge. A collateral mortgage consists of at least three documents, and takes several steps to complete. First, there is a promissory note, usually called a collateral mortgage note or a "ne varietur" note. The collateral mortgage note is secured by a mortgage, the so-called collateral mortgage. The mortgage provides the creditor with security in the enforcement of the collateral mortgage note.

Up to this point, a collateral mortgage appears to be identical to both a mortgage to secure future advances and an ordinary mortgage. But a distinction arises in the collateral mortgage situation because money is not directly advanced on the note that is paraphed for identification with the act of mortgage. Rather, the collateral mortgage note and the mortgage which secures it are *pledged* to secure a debt. (Emphasis in original).

Applying these principles to the case at bar, the Court finds that on September 22, 1980, Keating AC executed a collateral mortgage (P.Ex. 3), collateral mortgage note (P.Ex. 4), and a hand note (P.Ex. 5). The collateral mortgage note was pledged, pursuant to a collateral pledge agreement (P.Ex. 7) by Keating AC, *alone.*

Thus, on September 22, 1980, Keating AC pledged security which it did not own for a corporate debt. Since Keating AC did not own the property, the mortgage and pledge of security were invalid. Even if the Act of Correction corrected the prior invalid mortgage, FNJ did not subsequently obtain a signed collateral pledge agreement from the Keatings. Instead, all collateral pledge agreements were executed by Keating AC. As a result, the pledge of the collateral mortgage and collateral mortgage note was never given by the Keatings for a debt of Keating AC. Since a proper pledge is required for a valid collateral mortgage, FNJ's security interest fails.

FNJ argues that the Keatings made themselves parties to the collateral pledge agreements because the September 22, 1980 hand note (P.Ex. 5), as well as a subsequent hand note of September 15, 1981 for $325,000.00 (D.Ex. 8), defined "Collateral" as:

> ... any funds, guarantees, or other property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be, hypothecated, directly or indirectly by the undersigned or others, in connection with, or as security for, the Indebtedness or any part thereof ...

FNJ argues that the term "Collateral" clearly includes the collateral mortgage note and the collateral pledge agreements.

The customary method of connecting the hand note to the security is to designate on the face of the hand note that it is secured by the pledge of the mortgage note. *See Durham v. First Guaranty Bank,* 331 So.2d 563, 565 (La.App. 1st Cir.1976). No such notation was made on the hand note at issue. Further, the broad language of the hand note which does not specifically refer to the collateral mortgage or collateral mortgage note, cannot substitute for FNJ's failure to obtain a new collateral pledge agreement from the Keatings. Additionally, the fact that FNJ had required Keating AC to execute a collateral pledge agreement indicates that in the context of this transaction, the execution of a sepa-

rate collateral pledge agreement was anticipated.

 Finally, a valid pledge requires delivery of the thing pledged. La.Civil Code art. 3153. In the case at bar, there was no physical delivery of the collateral mortgage note by the Keatings; the delivery was made by Keating AC. The mere fact that FNJ retained the collateral mortgage and the collateral mortgage note, does not prove delivery by the Keatings. As indicated in *First Guaranty Bank*, 366 So.2d at 1304 n. 4, "Mere retention of the thing pledged, i.e. the collateral mortgage note does not determine the continued existence of the pledge." *See Durham v. First Guaranty Bank*, 331 So.2d 563 (La.App. 1st Cir.1976). There is no proof that a pledge was intended by the Keatings individually in connection with the original collateral mortgage and collateral mortgage note or with the Act of Correction.

For all these reasons, the Court finds that the Keatings did not pledge their property for a debt of Keating AC. Since a valid pledge is an essential element of a valid collateral mortgage, the loan by FNJ is unsecured.

The Keatings filed a cross appeal requesting this Court to remand the case to the Bankruptcy Court for an evidentiary hearing to determine the amount of damages, if any, sustained by the Keatings as a result of the wrongful seizure of their property by FNJ. During the proceedings in the Bankruptcy Court, Judge Kingsmill, Jr. interrupted certain testimony on damages, stating that damages would be deferred for a later determination. (Transcript pp. 156, 157, 158). However, in its decision, the Bankruptcy Court denied damages for wrongful seizure. This Court finds that before damages should be denied the completion of all testimony on damages should be made. Accordingly, this case is REMANDED to the Bankruptcy Court for an evidentiary hearing to determine the amount of damage sustained, if any, by the Keatings as a result of the wrongful seizure by FNJ.