ARMSTRONG, Judge.
Plaintiff, Paul Matherne, Sr., appeals the trial court’s judgment declaring defendant’s outstanding debt to plaintiff prescribed and unenforceable and permanently restraining plaintiff from proceeding with the foreclosure and sale of defendant’s property.
Margaret Bobe Wellbat (now deceased) and her daughter, Anna Wellbat Purdy, defendant in this case, executed two promissory notes in favor of Paul Matherne, Sr.; the "large note” dated May 26, 1972, in the amount of $29,500.00 and the “small note” dated October 1, 1975 in the amount of $2,996.12. The large note was payable in monthly installments of $248.00 with the small note being payable on or before five years after the date of execution.
In the accompanying mortgage agreements, the mortgagors obligated themselves to secure fire insurance to keep the buildings insured against loss from fire, and to transfer the policies to the Mortgagee or any holder of the note(s) “up to the full amount of said Note.” The mortgagors further authorized any note holder to act as agents and procure or continue said insurance, if mortgagors defaulted on said insurance. Both notes contained a provision that the full amount of the note was to become immediately due in the event of the maker’s default on any payment called for therein.
The promissory notes and its accompanying mortgage agreement held by Mr. Math-erne were for the property, located at 863— 67 Camp Street, which housed the automobile glass replacement business, Don’t Cuss See Gus, Inc., of which Mr. Matherne and Mrs. Wellbat were co-owners. By a 99 year lease Mrs. Wellbat charged the incorporated business $200.00 a month rent on her property and she also served as the business’ book-keeper. Due to a long illness Mrs. Wellbat was out of the office from 1965 until her death in December of 1979. During this period her salary was continued and payments on the notes were made by deductions from her paychecks. These payments were terminated along with her salary upon her death.
For the course of her illness and until the present day Mr. Matherne has had the promissory notes and mortgage agreement in his hands. He also maintained fire insurance on the mortgaged building up to the year 1985 as shown by exhibits of insurance policies, in accordance with the mortgage agreements. The business, Don’t Cuss, See Gus, Inc., went into chapter 7 bankruptcy sometime after that. Mr. Matherne concedes that no legal action was *623 taken to collect either note within 5 years of December 1979. Mr. Burg, the record keeper of Don’t Cuss, See Gus Inc., testified that the small note was paid out first and only the large note was still outstanding.
Mrs. Wellbat’s estate was not opened until 1988. On April 29, 1988, Mr. Math-erne gave notice of the due debt by opposing the first provisional accounting of the Succession of Margaret Bobe Wellbat, in the 24th Judicial District Court, Parish of Jefferson. On January 23, 1989, Mr. Math-erne also foreclosed on the mortgages for failure of the defendant to pay, in accordance with the mortgage instruments.
On January 31, 1989, Mr. Matherne filed a Petition for Executory Process on a mortgage note in district court naming Ms. Pur-dy, individually and as testamentary executrix for the Succession of Margaret Bobe Wellbat. Ms. Purdy answered said Petition for Executory Process by filing a Petition for Injunction to Arrest Seizure and Sale Under Executory Process and Petition for Declaratory Judgment. The hearing on the Request for Preliminary Injunction had been previously set on September 15, 1989 but was continued at the request of Mr. Matherne to November 17, 1989. Accordingly, a preliminary injunction was issued enjoining the sale of the subject property until after the hearing on November 17, 1989. All parties agreed that a full eviden-tiary hearing would take place on November 17, 1989 concerning the common issue to both the petition for injunction and petition for declaratory judgment, i.e. were the notes which were the subject of the petition for executory process prescribed? The trial court found that there was no interruption of prescription. Accordingly, it rendered judgment in favor of Ms. Purdy granting her a permanent injunction and further declaring the notes prescribed, the mortgage unenforceable, and ordering cancellation of the inscriptions in the Mortgage office.
Mr. Matherne now appeals the decision rendered in open court on November 17, 1989 and signed November 28, 1989.
Louisiana law is clear that notes, like the large note, which are payable in monthly installments and contain a provision that the note is to become immediately due in the event of the maker’s default, become due upon the maker’s default on the first unpaid monthly payment; and therefore, prescription begins to run at that time and accrues five (5) years later. Dassau v. Seary, 158 So.2d 243 (La.App. 4th Cir.1963). Louisiana law is also clear that if the principal obligation has prescribed and is extinguished, any accessory obligation securing the principal obligation is also extinguished and unenforceable. Dassau v. Seary, supra; Thrift Funds Canal, Inc. v. Foy, 261 La. 573, 260 So.2d 628 (1972). A conventional mortgage is an accessory device founded upon a principal debt and when the principal debt is extinguished, the mortgage disappears. Thrift Funds Canal, Inc. v. Foy, supra.
On their face both notes were prescribed. Therefore, the trial court placed the burden of proof on Mr. Matherne to show an interruption of prescription.
Mr. Matherne relied on the promissory notes and mortgage agreements themselves which he alleges contain pledge language. He also argues that the fire insurance policies were transacted in amounts to secure the underlying debt. Mr. Matherne argues that the delivery of the insurance policy is consistent with an act of pledge which requires delivery. Mr. Burg testified that Mr. Matherne made the payments on the insurance policy and he had no recollection of any payments being made by Mrs. Wellbat. Mr. Matherne argues that it is not relevant whether the debtors made payment on the insurance policies. Mr. Matherne cites La.C.C. article 3133 et seq. which sets out the elements of a valid pledge:
There must be a valid principal obligation, the pledgor must have an ownership interest in the thing pledged, the pledgee must be put in possession of the property pledged, and there must be an oral or written contract of pledge.
Alley v. Miramon, 614 F.2d 1372 (5th Cir.1980).
Ms. Purdy argues that there is no evidence that Mrs. Wellbat purchased and de *624 livered a fire insurance policy on the mortgaged property to Mr. Matherne. More significantly, Ms. Purdy argues that Mrs. Nesbitt, the insurance sales person who handled the fire insurance on the mortgaged property since 1979, testified that she sent the bills and forwarded the original of the insurance policy to Mr. Math-erne. Mrs. Nesbitt further testified that it was customary practice and a requirement of the mortgage clause in the insurance policy that the original of the policy be sent by the insurance company to the mortgagee, Mr. Matherne.
The issue here is not whether the fire insurance policy is capable of serving as a pledge but whether in this instance the parties intended that. Mr. Matherne argues that the contract language makes the intent of the parties clear. The contract language Mr. Matherne refers to is found in the mortgage agreement:
The said mortgagor further binds herself, to keep the buildings on above described property constantly insured against the loss by fire, and to transfer such insurance and deliver the policies to the Mortgagee or any other holder or holders of the above described Note up to the full amount of said note, said Mortgagor hereby authorizing said Mortgagee or any holder or holders of the above described note to cause said insurance to be effected on her default, at a premium not exceeding current/rate per cent.
Mr. Matherne maintains that from this provision it is obvious that the fire insurance secured the amount of debt due and owing to the creditor, necessarily constituting a pledge. We disagree.
This language is standard for the purpose intended. Requirements that a mortgagor purchase fire insurance sufficient to protect the mortgagee’s investment in the property from fire is a separate and distinct purpose from a security device intended to protect a creditor in case of a debtor’s default. There is nothing in this language to indicate that it was designed to do the latter.
Ms. Purdy states that Mr. Matherne failed to cite any evidence which supports his arguments. Because of this glaring lack of evidence or basis for appeal, Ms. Purdy avers that Mr. Matherne’s appeal is frivolous and she is entitled to an award for damages in accordance with Rule 2-19 of the Uniform Rules, Courts of Appeal.
Mr. Matherne argues that the appeal is worthy because the issue is novel and the lower court erred in not recognizing the pledge and thus finding his claim prescribed.
We are not inclined to say that Mr. Math-erne’s appeal is frivolous. However, from the instruments themselves and the hearing testimony it is abundantly clear that it was Mr. Matherne’s intent to protect the loan extended by purchasing adequate insurance coverage to do so, but it is misleading to construe the insurance policy as a pledge for such purposes. As the trial court reasoned,:
This is not a pledge. Mr. Matherne held the policy under the insuring requirements of the loss-payee clause, not as a pledge at all.
For the foregoing reasons, the trial court’s judgment is affirmed.
AFFIRMED.