273 So.2d 343 (1972)
SLIDELL BUILDING SUPPLY, INC.
v.
I. D. S. MORTGAGE CORPORATION, et al.
No. 8954.
Court of Appeal of Louisiana, First Circuit.
October 6, 1972.
Rehearing Denied January 31, 1973.
Writ Refused March 26, 1973.
*344 Clint L. Pierson and Clint L. Pierson, Jr., Baton Rouge, for appellant.
Camille A. Cutrone (Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger), New Orleans, Wm. J. Jones, Jr. (Barranger, Barranger, Jones & Fussell), Covington, for appellees.
Before LANDRY, SARTAIN and BLANCHE, JJ.
BLANCHE, Judge.
This appeal is from the trial court's dismissal, at plaintiff's costs, of a lawsuit seeking nullity on the grounds of fraud and ill practices of a previous order of seizure and sale under executory process and of the judgment refusing to enjoin the seizure and sale. The trial court provided Written Reasons for Judgment and we adopt its statement of the salient facts behind the various transactions involved in this case as follows:
"This suit arises from an executory proceeding brought by I.D.S. Mortgage Corporation against Slidell Building Supply, Inc. and George Reine. I.D.S. Mortgage Corporation foreclosed against Slidell Building Supply, Inc. and George Reine on a note and collateral mortgage in the amount of ONE MILLION FOUR HUNDRED FORTY SEVEN THOUSAND ONE HUNDRED AND NO/100 ($1,447,100.00) DOLLARS.
"The evidence shows that Slidell Building Supply, Inc., through George E. Reine, engaged the services of Development Financing Corporation, represented by Frank True, to find a lender who would loan money to Slidell Building Supply, Inc. to construct one hundred (100) houses in Slidell, Louisiana. Slidell Building Supply, Inc. had already obtained an F.H.A. commitment to insure the permanent loan, and had entered into an agreement with Country Life Insurance Company to make the permanent loan.
"Through Frank True, George Reine made contact with Investors Diversified Services, Inc., or I.D.S., Inc., and that *345 company agreed to loan Slidell Building Supply, Inc. ONE MILLION ONE HUNDRED THOUSAND AND NO/100 ($1,100,000.00) DOLLARS.
"On July 15, 1966, at the offices of Development Financing Corporation in New Orleans, Louisiana, Slidell Building Supply, Inc. executed a collateral mortgage note, payable to bearer, and a collateral mortgage in the amount of ONE MILLION FOUR HUNDRED FORTY SEVEN THOUSAND ONE HUNDRED AND NO/100 ($1,447,100.00) DOLLARS. On the same date, Slidell Building Supply, Inc. executed a construction loan agreement. Subsequently, the collateral mortgage and the other documents relating to the loan agreement were mailed to I.D.S., Inc. who in turn wired ONE HUNDRED FORTY THOUSAND SIX HUNDRED AND NO/100 ($140,600.00) DOLLARS to Stewart Title of Louisiana, Inc. for the initial disbursement of funds. The initial disbursement was made on July 22, 1966, at which time Slidell Building Supply, Inc., executed two hand notes, one for FIFTY THOUSAND SIX HUNDRED AND NO/100 ($50,600.00) DOLLARS and one for NINETY THOUSAND AND NO/100 ($90,000.00) DOLLARS for a total of ONE HUNDRED FORTY THOUSAND SIX HUNDRED AND NO/100 ($140,600.00) DOLLARS.
"Subsequent disbursements were made by I.D.S., Inc. through licensed title companies. As disbursements were made, hand notes were executed by the borrower in either Slidell or New Orleans drawn payable to the order of Development Financing Corporation, and personally endorsed by George E. Reine, Jr. When the hand notes were received by Development Financing Corporation they were endorsed by that company and forwarded to I.D.S., Inc. in Minneapolis, Minnesota.
"On December 30, 1966, I.D.S., Inc., having decided to pursue mortgage banking more vigorously, transferred various mortgage loans held by it to a wholly owned subsidiary named I.D.S. Mortgage Corporation. I.D.S. Mortgage Corporation executed a promissory note payable to I.D.S., Inc. as payment for the note of Slidell Building Supply, Inc., and other mortgage notes at the time of the transfer. When I.D.S., Inc. transferred the Slidell Building Supply, Inc. note to I.D.S. Mortgage Corporation, a separate document entitled a `Mortgage Allonge' was placed or connected to the note containing an `in blank' endorsement by I.D.S., Inc. This allonge was paraphed for identity with an act of notarial endorsement dated December 30, 1966.
"On March 2, 1967, I.D.S. Mortgage Corporation transferred various notes and mortgages held by it to First National Bank of Minneapolis. The transfer was made in contemplation of I.D.S. Mortgage Corporation receiving from the First National Bank of Minneapolis, a line of credit whereby it could carry out its mortgage loan business. In connection therewith there was executed a security agreement termed a `warehousing agreement' by the mortgage banking industry.
"On March 15, 1967, in accordance with the security agreement, I.D.S. Mortgage Corporation delivered the Slidell Building Supply, Inc. note to the Minneapolis bank as collateral, and received from the bank FIVE HUNDRED TWO THOUSAND NINE HUNDRED SEVENTY-FIVE AND 55/100 ($502,975.55) DOLLARS. A second mortgage allonge and notarial endorsement was attached to the note for delivery to the bank.
"In June of 1968, it was contemplated that the permanent loan on the Slidell property would be executed. Accordingly, *346 on June 24, 1968, the Minneapolis bank gave the note of Slidell Building Supply, Inc. back to I.D.S. Mortgage Corporation receiving therefor a trust receipt. The closing of the permanent loan did not take place. Immediately thereafter, IDS Mortgage Corporation returned the Slidell Building Supply, Inc. note to the Minneapolis bank. The bank then returned the note to I.D.S. Mortgage Corporation for purposes of foreclosure. When the note was returned the second mortgage allonge was removed by the bank." (Written Reasons for Judgment, Record, pp. 620-622)
On August 8, 1968, the mortgage was foreclosed upon by executory process. The chronology of events which took place after the foreclosure are set forth in the opinion of this Court found in the record of this cause. Slidell Building Supply, Inc. v. I.D.S. Mortgage Corporation, 237 So.2d 923 (La.App.1st Cir. 1970).
Suffice it to say that in the foreclosure proceedings Slidell Building Supply, Inc., endeavored to enjoin the seizure and sale of the property described in the mortgage. Injunctive relief was denied and the denial was maintained by this Court and by the Supreme Court of Louisiana.
Subsequently, this suit to annul the previous order of seizure and sale and the judgment refusing injunctive relief on the grounds of fraud and ill practices was filed in the Twenty-second Judicial District Court for the Parish of St. Tammany by Slidell Building Supply, Inc. The defendant filed an exception of res judicata to the nullity suit on the basis that all issues had been previously adjudicated in the injunction proceeding. The lower court maintained the exception of res judicata to the nullity suit but this Court reversed and remanded the case for a hearing on the question of nullity because of fraud and ill practices with the following instructions:
"In the first suit the trial judge held that the three principal grounds for seeking an injunction, namely, (1) that the mortgage sued upon was not an authentic act, (2) that there was a discrepancy between the Act of Mortgage and the note with respect to attorney's fees, and (3) the corporate resolution was insufficient to authorize the execution of the mortgage were not such grounds as would warrant the granting of an injunction. In the absence of any fraud or ill practice, which burden rests squarely with Slidell, the adjudication on these three issues in the injunction suit are beyond further attack.
"Inasmuch as no evidence was admitted as to plaintiff's contentions of fraud and ill practice and consequently no ruling was made upholding or denying such charges, this matter must be remanded for these purposes. In the event it is determined that the seizure and sale were obtained through such practices, then I. D.S. will be required to proceed by ordinary process for the collection of any sums due it under the mortgage and plaintiff will then be entitled to be heard on its claims for an accounting and damages.
"Should the trial judge, after first hearing evidence as to the allegations of fraud and ill practice, hold that Slidell has failed to prove the same, then the previous seizure and sale shall survive and the exceptions as to venue are well taken and Slidell must sue defendants for an accounting and damages in the court of defendants' domicile." (Slidell Building Supply, Inc. v. I.D.S. Mortgage Corporation, La.App., 237 So.2d 923, 927.)
The trial court, after a hearing for the purpose of taking evidence on the matter of fraud and ill practices, was of the opinion that Slidell had failed to bear its burden of establishing such fraud or ill practices as would nullify the previous judgment refusing to grant the injunction requested by Slidell, and plaintiff's suit was dismissed. It is from this judgment that Slidell has appealed and has submitted seven specifications of error.
*347 The jurisprudence is uniform to the effect that executory process is a harsh remedy by which a debtor's property may be seized without previous notice, see, e.g., Tapp v. Guaranty Finance Company, 158 So.2d 228 (La.App.1st Cir. 1963), writ refused, 245 La. 640, 160 So.2d 228, and each step in the executory process must be carried out in strict compliance with the letter of the law as is set out in the Code of Civil Procedure and the applicable jurisprudence. Myrtle Grove Packing Company v. Mones, 226 La. 287, 76 So.2d 305 (1954). By its very nature, executory process is subject to extreme abuse. Consequently, the appellate courts of this state have not hesitated to deny application for executory process where strict compliance with statute was not observed.
Ordinarily, defects in the executory procedure have been urged either by a petition to enjoin the seizure and sale or by a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both. Code of Civil Procedure Article 2642. Nevertheless, we believe that defects in the executory proceeding which would amount to fraud or ill practices may be raised for the first time in an action to annul a judgment (Code of Civil Procedure Article 2004). Therefore, the sole issue before this Court is whether Slidell has proved that the writ of seizure and sale was obtained by fraud or ill practices. We find, as did the district court, that it has not sustained its burden of proof.
Clearly, from the text of Article 2004, it is evident that there is a distinction between fraud, on the one hand, and ill practices, on the other. The article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through an improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of a legal right and which would render the enforcement of the judgment unconscionable and inequitable. Tapp v. Guaranty Finance Company, Inc., cited supra; Mack Trucks, Inc. v. Dixon, 142 So. 2d 605 (La.App.4th Cir. 1962); Soileau v. Pitre, 79 So.2d 628 (La.App.1st Cir. 1955); Futch v. Gregory, 40 So.2d 830 (La.App., 2nd Cir. 1949).
The collateral mortgage note given by plaintiff was for $1,447,100.00, and was payable to the order of "Bearer." The collateral mortgage states that the note was given to secure future advances. In the prior proceeding for injunction it was stipulated between these parties that advances in excess of $1,000,000 were, in fact, made.
On this appeal there are two main issues raised by plaintiff-appellant: First, that the numerous hand notes given as the advances were made were not presented to the judge in the proceeding for executory process; and second, that the notarial endorsements of the collateral mortgage note from I.D.S., Inc., to defendant herein, and from defendant to the Minnesota bank (which had been stapled to the note) were removed from the note prior to the application for executory process.
Code of Civil Procedure Article 2635 provides, in part:
"The plaintiff shall submit with his petition the authentic evidence necessary to prove his right to use executory process to enforce the mortgage or privilege. These exhibits shall include authentic evidence of:
"(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege; * * *."
In essence, plaintiff is contending that the collateral mortgage note is not the "instrument evidencing the obligation secured by the mortgage," but that the hand notes are and should have been presented to the judge in order to prove the debt and defendant's right to executory process. A similar argument was rejected in Scarborough v. Duke, 251 So.2d 55 (La.App.3rd *348 Cir. 1971), writ refused, 259 La. 882, 253 So.2d 216. The very purpose of the collateral mortgage is to avoid the necessity of paraphing the mortgage with each hand note as an advance is made. (There were 164 hand notes in this case.) We hold that the collateral mortgage note is the "instrument evidencing the obligation secured by the mortgage." To hold otherwise would have the effect of destroying the utility and usefulness of the collateral mortgage as a security device.
The evidence adduced in this case shows that the first allonge (notarial endorsement) was prepared and attached to the note to facilitate the internal bookkeeping of the defendant and its parent corporation, and to satisfy the auditors, while the second was attached to satisfy Minnesota law (under which the Minnesota bank was operating when it accepted the Slidell note as security for a loan to I.D.S. Mortgage Corporation). We cannot find that this amounted to fraud or ill practices. The note in question was payable to the order of "Bearer" and therefore was negotiable by delivery. LSA-R.S. 7:30. Under both Louisiana law (LSA-R.S. 7:48) and Minnesota law (Minn.Stat.Ann. 336.3-208) the holder of a note may strike out or cancel any endorsement which is not necessary to his title. The removal of these allonges was equivalent to striking out or cancelling the endorsements.
Plaintiff also argues that defendant was not the owner of the hand notes and that the hand notes were not secured by the collateral mortgage and collateral mortgage note. The evidence adduced on the trial of this case clearly shows otherwise. The 164 hand notes are each payable to the order of Development Financing Corporation and endorsed by it to I.D.S., Inc. Each note bears the notation that it is "secured by one certain mortgage note dated July 15, 1966, in the principal sum of $1,447,100.00 payable to the order of Bearer and subscribed by Slidell Building Supply, Inc." The evidence establishes that each of these hand notes was transferred to I.D.S. Mortgage Corporation for value.
LSA-R.S. 7:49, in pertinent part, states:
"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein * * *."
That the absence of the endorsement would deprive defendant of the right to use executory process if the hand notes were required to be produced in the executory proceeding is immaterial, since we have held that defendant was entitled to use executory process on the collateral mortgage note and collateral mortgage.
The final issue raised by plaintiff-appellant is that there was a variance between the collateral mortgage note and the description of the collateral mortgage note contained in the collateral mortgage. The collateral mortgage note states that it is payable "to the order of Bearer at the office of Development Financing Corporation, in New Orleans, Louisiana, or at such other place as they may designate." On the other hand, the collateral mortgage describes the note as being payable to the order of "Bearer" "at the office of the holder of the note."
We cannot find that this is such a variance as will entitle the plaintiff to set aside the order of seizure and sale three years after its issuance. In 1968, after the order of seizure and sale issued, plaintiff restrained the sale on the grounds, among others, that there was a variance between the note and mortgage (other than the one complained of herein). After a hearing, the prayer for injunction was denied and the denial was upheld by this Court and the Supreme Court. We cannot now find that the order of seizure and sale or the judgment refusing to enjoin seizure and sale was obtained by fraud or ill-practices, or that to allow these judgments to stand would be unconscionable or inequitable.
*349 For the foregoing reasons, the judgment of the district court is affirmed. All costs are to be borne by plaintiff.
Affirmed.