522 So.2d 1328 (1988)
BANK OF COUSHATTA, Plaintiff-Appellant,
v.
Ralph E. KING, Jr., et al, Defendants-Appellees.
No. 19437-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1988.
*1330 Robert E. Bethard, Coushatta, for plaintiff-appellant.
James Farrier, Baton Rouge, for defendants-appellees.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The Bank of Coushatta brought this deficiency judgment action against the defendant, Christine Sullivan King, following a foreclosure by executory process. The trial court found that the executory proceedings were defective and denied the Bank's demands. The Bank appealed.
FACTS
On July 9, 1984, the Bank filed a suit for executory process against Ralph King, Jr. and his wife, Christine Sullivan King. In its petition, the Bank alleged that it was the holder and owner of two promissory notes executed by the Kings. These were collateral mortgage notes. The first promissory note for $250,000 was executed on August 3, 1981, and made due on demand. The note was made payable by the Kings to "themselves" and was endorsed in blank. The note provided for twelve percent per annum interest from date until paid, with twenty percent attorney fees on the principal and interest due. The second note for $250,000 was executed on August 20, 1981. Its provisions were identical to those of the first note.
Each note was paraphed "Ne Varietur" for identification with an authentic act of mortgage on real estate located in Franklin Parish. Each mortgage contained a confession of judgment.
The amount owed on the collateral mortgage notes was not alleged in the body of the petition. However, in the prayer of the petition, the plaintiff made demand upon the defendants for payment in the amount of $293,540.08, together with 13.50 percent per annum interest from December 1, 1983, until paid, plus 25 percent attorney fees on both principal and interest, and all costs, and in default of payment, plaintiff prayed that a writ of seizure and sale be issued for the sale of the described real estate, with benefit of appraisal, to satisfy the debt. Both notes and certified copies of the mortgages were attached to the petition for executory process. Also, attached to the petition was a notarized verification by the Bank's president that the facts contained in the petition were true and correct. No other documents were attached to the petition.
Payment was not made and a writ of seizure and sale was subsequently issued. The mortgaged property was appraised, and adjudicated to the Bank at the Sheriff's sale on February 6, 1985, at a price of $70,000. The total cost of the Sheriff's sale was $2,095.79, thus entitling the Kings to a credit of $67,904.21 on the writ.
The sales proceeds were insufficient to satisfy the principal indebtedness of $293,540.08 prayed for in the petition for executory process. Therefore, on December 16, 1985, the Bank filed a suit for deficiency judgment. The suit was filed against Mrs. King alone, who was then divorced from Mr. King.
In its suit for deficiency judgment, the bank attached to the petition the two collateral mortgage notes and certified copies of the two acts of mortgage, which had been filed in the original suit for executory process. The Bank also attached a single payment handnote. This handnote was executed by Mr. King alone. The handnote was in the original principal amount of $293,540.08. It was executed on December 1, 1983, and made due on March 1, 1984. The note provided for 13.5 percent per annum interest from date until paid and 25 percent attorney fees on the principal and interest due. The handnote bore a notation which designated as collateral a "[c]ollateral pledge agreement dated 09/04/81 in the amount of $500M covering land in Franklin Parish (192 acres) and collateral pledge agreement dated 5/24/83 in the amount of $6,000.00 covering land in Winnsboro, LA." (The dates and property descriptions do not coincide with those on the collateral mortgages which were attached to the petition.)
*1331 Also attached to the petition for deficiency judgment was a continuing guaranty executed by Mrs. King on September 4, 1981, guaranteeing Mr. King's debts up to $393,884.40. The Bank sought judgment against Mrs. King in the amount of $293,540.08, together with 13.50 percent per annum interest for a period of one year from December 1, 1983, and 25 percent attorney fees on the aggregate amount of both principal and interest due, and all costs, subject to a credit of $67,904.21 derived from the previous Sheriff's sale which was held on February 6, 1985.
Mrs. King answered the suit, alleging several defects in the executory proceedings which would prevent the bank from obtaining a deficiency judgment against her. The trial court ruled in favor of Mrs. King and rejected the demands of the Bank.
In its written reasons for judgment, the trial court found the executory proceedings defective because the Bank failed to attach the handnote to the petition for executory process in compliance with LSA-C.C.P. Art. 2637(C), and an authentic copy of the collateral pledge agreement which formed a necessary link between the handnote and the collateral mortgage note.
Finding that the plaintiff had lost its right to obtain a deficiency judgment on the handnote signed by Mr. King, the trial court ruled that the plaintiff was not entitled to a deficiency judgment against Mrs. King. The trial court issued its written reasons for judgment on April 24, 1987, and a judgment dismissing the plaintiff's petition was signed on June 29, 1987.
The Bank appealed. It relies upon the following assignments of error: (1) the trial court erred in finding that LSA-C.C.P. Art. 2637 required that the handnote be attached to the petition for executory process when a collateral mortgage note is sued upon; (2) the trial court erred in finding that a certified copy of the collateral pledge agreement should have been attached to the petition for executory process; and (3) the trial court erred in determining that the plaintiff was not entitled to a deficiency judgment against Mrs. King.

THE HANDNOTE
The Bank asserts in its first assignment of error that the trial court erred in its interpretation of LSA-C.C.P. Art. 2637. The trial court found that, following its 1983 amendment, Article 2637 mandates that in the case of a collateral mortgage, the handnote must be attached to the petition for executory process.
The articles governing evidence required for executory process are LSA-C.C.P. Art. 2635, 2636, and 2637. These articles provide, in pertinent part, as follows:
Art. 2635. Authentic evidence submitted with petition
The plaintiff shall submit with his petition the authentic evidence necessary to prove his right to use executory process to enforce the mortgage or privilege. These exhibits shall include authentic evidence of:
(1) The note, bond, or other instrument evidencing the obligation secured by the mortgage or privilege.
(2) The authentic act of mortgage or privilege on immovable property importing a confession of judgment.
. . . .
(4) Any judgment, judicial letters, order of court, or authentic act necessary to complete the proof of plaintiff's right to use executory process.
This requirement of authentic evidence is necessary only in those cases, and to the extent, provided by law. A variance between the recitals of the note and of the mortgage regarding the obligation to pay attorney's fees shall not preclude the use of executory process.
Art. 2636. Authentic evidence
The following documentary evidence shall be deemed to be authentic for purposes of executory process:
(1) The note, bond or other instrument evidencing the obligation secured by the mortgage or privilege, paraphed for identification with the act of mortgage or privilege by the notary or other officer before whom it is executed;

*1332 (2) A certified copy or a duplicate original of an authentic act;
. . . .
(6) All other documentary evidence recognized by law as authentic.
Art. 2637. Evidence which need not be authentic
A. Evidence as to the proper party defendant, or as to the necessity for appointing an attorney at law to represent an unrepresented defendant, or of any agreement to extend or modify the obligation to pay or of written notification of default, or of the breach or occurrence of a condition of the act of mortgage or privilege maturing the obligation, or of advances made by the holder of a collateral mortgage note or note for future advances, need not be submitted in authentic form. These facts may be proved by the verified petition, or supplemental petition, or by affidavits submitted therewith.
. . . .
C. If a mortgage sought to be enforced is a collateral mortgage on movable or immovable property, the existence of the actual indebtedness may be proved by the verified petition or supplemental petition, with the handnote, handnotes, or other evidence representing the actual indebtedness attached as an exhibit to the petition....
Paragraph C of Article 2637 was added by amendment in 1983.
In routine financial transactions, such as that which occurred in this case, the collateral mortgage note does not represent the indebtedness; it is the security that is pledged to secure the payment of another note, usually a handnote, which represents the indebtedness. The true indebtedness is the debt that the collateral mortgage note is pledged to secure. Nevertheless, the jurisprudence has established that, in foreclosures of collateral mortgages, for the purposes of executory process, the collateral mortgage note is the "instrument evidencing the obligation secured by the mortgage." LSA-C.C.P. Art. 2636(1). Slidell Building Supply, Inc. v. I.D.S. Mortgage Corp., 273 So.2d 343 (La.App. 1st Cir.1972), writ denied 274 So.2d 708 (La.1973); Cameron Brown South, Inc. v. East Glen Oaks, 341 So.2d 450 (La.App. 1st Cir.1976); Fuller v. Underwood, 355 So.2d 62 (La. App. 2d Cir.1978), writ denied 357 So.2d 1153 (La.1978); Pontchartrain State Bank v. Gross, 508 So.2d 901 (La.App. 5th Cir. 1987). Consequently, production of the handnote has not been required in executory proceedings.
A law review commentator recommended in 1973 that Article 2637 be amended to provide for the filing of handnotes in suits to foreclose collateral mortgages, since the handnote represents the actual obligation.
In conclusion, the thrust of this inquiry is that an essential link in the chain of authentic evidence is missing if the hand note in a collateral mortgage package is not submitted in authentic form with the petition for executory process.... The mortgage should be valid as a security right in that it is accessory to an existing debt represented by the hand note. The only problem is that since the hand note is the evidence of the obligation secured by the mortgage, but is not in authentic form, the express requirements for authentic evidence may not be fulfilled.
... [T]he solution may be to amend Code of Civil Procedure Article 2637 to include handnotes. ... The form provided in Article 2637 is legislatively deemed to be authentic.
Crawford, Executory Process and Collateral MortgagesAuthentic Evidence of the Hand Note?, 33 La.L.Rev. 535 (1973).
With respect to proof of indebtedness, Article 2637 of the Code of Civil Procedure was amended in 1982 to provide that evidence of advances made by the holder of a collateral mortgage note or note for future advances need not be submitted in authentic form. Evidence of the debt could be proved by the verified petition or supplemental petition, or by affidavits submitted therewith. However, in 1983, the statute was amended by Acts 1983, No. 185, Section 1. The preamble to that Act provides:
To amend and reenact Code of Civil Procedure Article 2637, relative to proof requirements for executory proceedings, *1333 to provide that the existence of an actual debt secured by a collateral mortgage may be proved with the handnote or other evidence of indebtedness attached to the petition, and otherwise to provide with respect thereto. (Emphasis supplied)
The Act then amended LSA-C.C.P. Art. 2637 and added Subdivision C thereof, supra.
As a result of the amendment to these articles, it is apparent that, in foreclosing on a collateral mortgage by executory process, in addition to the filing of a verified petition with the collateral mortgage note and a certified copy of the collateral mortgage attached, there must also be evidence to prove the debt. The question is the manner in which that debt must be proved, i.e., by the filing of the handnote, or the attachment to the petition of "other evidence representing the actual indebtedness."
The Bank argues that the use of the permissive "may" in Article 2637(C) means that it is not necessary to attach the handnote to the petition. We interpret the use of the word "may" in the context of this section as signifying that the actual indebtedness can be proven by verified petition or supplemental petition. The handnotes or "other evidence" (such as a certificate under LSA-R.S. 6:334) are to be attached to the petition. We note that Sections A and B of the same article also utilize "may" in describing the methods of proof for other facts, such as evidence as to the proper party defendant or evidence of the breach or occurrence of a condition maturing the obligation. The use of the word "may" does not mean that these facts do not have to be proven. Instead, it only means the party seeking executory process is given some latitude in the exact method of proof.
Although Article 2637 provides that certain facts may be proved by the verified petition, the article does not lessen the requirement that every muniment of title and every link of evidence must be established when proving that a seizure and sale by executory process is justified. If all facts are not contained within the petition and attached documents, executory process fails. Federal National Mortgage Association v. Brown, 506 So.2d 628 (La.App. 4th Cir.1987).
We note that the Fifth Circuit Court of Appeal apparently views Article 2637 in a similar vein. In Pontchartrain State Bank, supra, the court addressed the question of whether it was necessary to file a collateral pledge agreement in the executory proceedings. The court concluded that the collateral pledge agreement in that case was "merely surplusage" and could not affect the validity of the proceedings, since the bank had included the promissory handnote as an exhibit to the verified petition "in compliance with LSA-C.C.P. Art. 2637 and had also included authentic evidence of the collateral mortgage note and the collateral mortgage."
Article 2637 gives the Bank the option of attaching either the handnote "or other evidence representing the actual indebtedness" to its verified petition or supplemental petition. In the instant case, the Bank did not file the handnote; therefore, the question is whether the Bank submitted other evidence representing the actual indebtedness attached to the petition as an exhibit.
LSA-R.S. 6:334 provides for authentic evidence of the existence of a debt in executory proceedings. The statute provides:
In the event of foreclosure by executory process of a mortgage on either movable or immovable property in favor of a supervised financial organization, the certificate of any officer thereof, under the seal of the supervised financial organization, certifying as to the amount due on the mortgage, the interest rate as applicable, and the maturity thereof by reason of the failure of the mortgagor, his assigns, or successors to comply with the obligations imposed on him by the act of the mortgage is authentic evidence of the facts recited in the certificate. (Emphasis supplied)
Thus, in light of the substantive nature of LSA-R.S. 6:334, if a proper certificate under the provisions of that statute *1334 is submitted as an exhibit to the petition, the requirements of Article 2637 are met. We find that the brief affidavit of verification signed by the Bank's president is insufficient to comply with LSA-R.S. 6:334. The statute contemplates a certificate independently stating the amount due, the applicable interest rate, and the maturity of the note. This certificate should stand on its own in providing authentic evidence of the identity of the debtor and those specific facts, rather than conclusions, outlining the nature of the debt and its maturity. Cf. Gulf Federal Savings Bank v. France, 499 So.2d 617 (La.App. 4th Cir.1986), writ denied 502 So.2d 115 (La.1987), and the certificate therein. The notarized verification attached to the petition of executory process in the present case merely stated:
G.E. Tisdale, Jr. who first being sworn, did depose and say that he is president of Bank of Coushatta, petitioner in the foregoing petition for executory process, that he has read the petition and the statements and allegations of fact made and contained therein are true and correct. Affiant further states that the obligation secured by the mortgages is due and in default, and defendants have breached a condition of the acts of mortgage, thus maturing the obligation and entitling the petitioner to executory process.
Examination of the petition for executory process reveals that the only mention of the amount of the indebtedness owed by the Kings is found in the prayer for relief. Although the prayer claims an indebtedness, no explanation is given anywhere in the pleadings as to why the claimed interest rate is higher than that specified in the attached mortgage note, or why the attorney fee demand is different from the amount shown in the notes and mortgages.
We find that the Bank's petition not only failed to attach the handnote, it alternatively failed to adequately provide "other evidence" of the indebtedness. Consequently, the Bank failed to satisfy Article 2637(C). Having found such a lack of compliance with executory process, we need not address the Bank's second assignment of error.

DEFICIENCY JUDGMENT
In the Bank's final assignment of error, the Bank alleges that the trial court erred in finding that it was not entitled to a deficiency judgment against Mrs. King. We find this assignment of error to be without merit.
Executory process is a harsh remedy, requiring strict compliance with the law. Moreover, where the executory proceedings contain a fundamental defect which strikes at its foundation, then such a defect is a defense to an action for deficiency judgment. Pontchartrain State Bank, supra.
The Bank's petition failed to adequately comply with the stringent rules of executory process. Consequently, no deficiency judgment may be rendered against Mrs. King.
Furthermore, the guaranty agreement entered into by Mrs. King and the Bank provided in part:
[W]aiving all notice and pleas of discussion and division, I agree to pay upon demand at any time to said Bank, its transferees, assigns or successors, the full amount of said indebtedness up to the amount of this guaranty, together with interest, fees and charges as above set forth, becoming subrogated in the event of payment in full by me to the claim of said Bank, its transferees, assigns or successors, together with whatever security it or they may hold against said indebtedness....
Contracts of guaranty, which are engagements to answer for the indebtedness of another, are governed by the Civil Code Articles regulating suretyship. LSA-C.C. Art. 3035, et seq; Boyle v. Fringe Facts, Inc., 414 So.2d 1333 (La.App. 2d Cir.1982).
Civil Code Article 3060 provided:
The surety may oppose to the creditor all the exceptions belonging to the principal debtor, and which are inherent to the debt; but he can not oppose exceptions *1335 which are personal to the debtor.[1]
Civil Code Article 3061 provided:
The surety is discharged when by the act of the creditor, the subrogation to his rights, mortgages and privileges can no longer be operated in favor of the surety.[2]
Based upon the above articles, and the principle that a deficiency judgment cannot result from a defective action for executory process, we can only conclude that the Bank is unable to obtain a deficiency judgment against Mrs. King on the obligations involved in this suit. See also Simmons v. Clark, 64 So.2d 520 (La.App. 1st Cir.1953).
Consequently, this assignment of error has no merit.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] The suretyship articles were revised effective January 1, 1988. This article was substantively reproduced in Article 3046.
[2] In the 1988 suretyship revisions, this article was incorporated into Article 3062, which provides that the modification or amendment of the principal obligation or the impairment of real security held for it, by the creditor, in any material manner without the consent of the security, has the effect of extinguishing an ordinary suretyship.