COVINGTON, Chief Judge.
This case involves the question of whether a creditor loses his right to a deficiency judgment because of alleged defects contained in the creditor’s petition for use of executory process. The trial court granted creditor’s motion for summary judgment, finding the Louisiana Supreme Court had decided the issue in First Guaranty Bank, Hammond, Louisiana v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La. 1987), and further finding that in cases where the operative facts occurred before the decision was handed down in First Guaranty, the holding in First Guaranty should be retroactively applied. We affirm.
On December 21, 1979, William J. Gelpi and Gloria B. Gelpi, a married couple residing in Baton Rouge, Louisiana, purchased a new 1979 model Holiday mobile home from Mobile Home Center, Inc. of Denham Springs, Louisiana. It was to be used as the office premises for Mrs. Gelpi’s Century 21 Real Estate agency in Baton Rouge. Being unable to afford to pay the cash purchase price of $31,270.00 all at once, Mr. and Mrs. Gelpi made a down payment of $6,000.00 and financed the unpaid cash price balance of $25,270.00 with a loan from Citicorp Homeowners, Inc. With the addition of $18.00 in title and registration fees and a substantial finance charge of $35,325.20, the total of payments to be made on the loan was $60,613.20. Mr. and Mrs. Gelpi executed two documents on the date of the purchase in connection with the loan:
1. A promissory note in the amount of $50,613.20 payable to “BEARER”, to be paid out over a period of fifteen years (hereinafter referred to as “the promissory note”), and
2. A document titled “Louisiana Sale and Chattel Mortgage — Mobile Home”, granting a chattel mortgage upon the mobile home to Citicorp Homeowners, Inc., and containing an assignment of the entire interest of the seller, Mobile Home Center, Inc., in the contract to Citicorp Homeowners, Inc. (hereinafter referred to as “the sale and chattel mortgage”).
Thereafter, Mr. and Mrs. Gelpi made all the payments on the promissory note timely and fulfilled all the requirements of the promissory note and the sale and chattel mortgage. Then, in late 1984, Mrs. Gelpi moved her real estate business to another office and had no further need of the mobile home. The Gelpis sought potential purchasers for it, and found Joel T. Houk and Cindy S. Houk of Baker, Louisiana. The agreement between the Gelpis and the Houks, to the extent that it is germane to this case, is embodied in a document titled “Mobile Home Transfer of Equity Agreement and Disclosure Statement” executed by them on October 8, 1984. In this document (hereinafter referred to as “the transfer of equity agreement”), the Gelpis transferred their entire equity, title and interest in the mobile home to the Houks in return for the Houks’ assumption of the entire unpaid loan balance of $40,745.54.
The Houks, unlike the Gelpis, did not fulfill their loan obligations and stopped making the monthly loan payments. Thereupon, the plaintiff herein, Citicorp Acceptance Company, Inc., initiated these legal proceedings on September 17, 1987, by filing a “Petition for Executory Process Without Notice to Pay and With Appraisal” against the Houks and the Gelpis.
*429 Subsequently a curator ad hoc was appointed to represent the Houks as absentee defendants. It appears that the curator, despite his efforts, was unable to locate or contact the Houks and that their whereabouts are unknown.
On April 7, 1988, the plaintiff filed an “Amended Petition for Deficiency Judgment” against the Houks and the Gelpis, alleging that the mobile home had been sold pursuant to executory process and seeking a judgment for the deficiency amount. The Gelpis responded by filing a “Peremptory Exception of No Right of Action” with a supporting memorandum. The basis of the Exception was that when the plaintiff filed its original Petition for Exec-utory Process, it failed to introduce adequate authentic evidence to support its entitlement to maintain the executory process; therefore, under well established jurisprudence, the plaintiff could not obtain a valid deficiency judgment because the exec-utory process was rendered null and fundamentally defective by the absence of the necessary authentic evidence. After the hearing of the Exception on August 5, 1988, the District Court signed a Judgment on August 12, 1988, maintaining the Exception and allowing the plaintiff fifteen days within which to amend its Amended Petition for Deficiency Judgment. The plaintiff then filed a “Second Amending Petition for Deficiency Judgment” on August 19, 1988 and an Affidavit on August 26, 1988, in an attempt to meet the objections raised in the Exception. The Gelpis responded by filing a “Second Peremptory Exception of No Right of Action” on September 13, 1988, alleging that the plaintiff's Second Amending Petition had failed to remove the grounds upon which the Gelpis’ first Exception was based. After the hearing of the Second Exception on October 28, 1988, the District Court signed a Judgment on November 17, 1988, overruling the Second Exception.
The Gelpis filed an Answer on November 21, 1988 and an Amended and Supplemental Answer on December 20, 1988. The plaintiff filed a Motion for Summary Judgment with supporting memorandum on November 30, 1988. After the hearing of the Motion on January 13, 1989, the District Court signed a Judgment on that date in favor of the plaintiff for the amounts prayed for in its deficiency judgment petitions. The Gelpis have perfected their appeal from that Judgment.
From 1968 to 1987, the jurisprudence regarding executory process and deficiency judgments remained consistent. League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (La.1968) and its progeny held that technical defects, in a petition by the creditor, seeking use of executory process, would bar the creditor from obtaining a deficiency judgment against the debtor.
In 1988, in First Guaranty Bank v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La.1987), the State Supreme Court overruled League Central, and held that defects that would preclude the creditor from using executory process would no longer preclude the creditor from obtaining a deficiency judgment against the debtor.
The operative facts in this case occurred prior to the Supreme Court’s decision in First Guaranty. The question now becomes whether to apply the First Guaranty holding retroactively.
In the twenty years following the League Central decision, the Supreme Court and the various appellate courts have resolved numerous deficiency judgment cases in favor of the defendant debtors by applying the rule of law there set forth. A large body of jurisprudence had developed wherein debtors raised various deficiencies of authentic evidence as defenses on the merits of deficiency judgment proceedings. However, in First Guaranty Bank v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La.1987), the court expressly overruled League Central, on rehearing on May 23, 1988. “After reviewing the pertinent statutes and their legislative history, we realize that the reasoning underlying the League Central decision was erroneous and that it must be overruled.” First Guaranty Bank, at 842.
The court reasoned in First Guaranty Bank, that statutes governing the proce *430 dure of executory process foreclosure actions are not prohibitory laws, and, therefore, failure to comply with the statutes does not produce absolute nullity. These statutes are not prohibitory because the debtor is not prohibited from raising any evidentiary defenses:
Instead, they provide that he may assert defenses and objections because of an infraction of the rules through an injunction proceeding to arrest the seizure and sale or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both. Thus, the Code contemplates that the debtor may invoke the defenses or renounce them as he chooses, leaving the clear implication that an unobjected to defect in the formal requirement of authenticity will not render the proceeding absolutely null.
529 So.2d at 843.
Furthermore, raising a defect in the chain of authentic evidence frequently will not avail the debtor because the creditor may convert the proceeding to an ordinary process and obtain a judgment against the debtor. See American Bank & Trust Co. in Monroe v. Carson Homes, Inc., 316 So.2d 732 (La.1975), wherein the debtor won its injunction; but when the creditor converted its suit to ordinary process, summary judgment was granted in its favor because. the debtor did not have a valid defense to the non-payment of the loan, 344 So.2d 456 (La.App. 2d Cir.), writ denied, 346 So.2d 221 (La.1977).
In First Guaranty Bank, the court expressly abrogated the reasoning in League Central which treated deficiency suits as a natural outgrowth of the executory proceeding. Justice Dennis’ opinion clearly points out that the substantive and procedural laws governing executory procedure and those governing deficiency actions are separate and distinct statutes:
The anomaly caused by the transformation of the executory process authentic evidence objection into a defense on the merits in a deficiency judgment action under League Central further indicates that the jurisprudence has developed contrary to the legislative intent. If the debtor diligently and successfully asserts such a defense in the executory proceeding, he usually cannot defeat the creditor’s rights. The creditor is expressly authorized to convert the executory proceeding into an ordinary proceeding wherein he may obtain a judgment for the full amount due and enforce his mortgage on the property.
(Citations omitted). [Emphasis added].
First Guaranty Bank, supra at 843.
The defendant-appellants argue that the decision in First Guaranty Bank should not be applied retroactively. In support of their argument, they cite Lake, Inc. v. Louisiana Power & Light Co., 330 So.2d 914 (La.1976), wherein the Supreme Court overruled the “St. Julien doctrine”. St. Julien v. Morgan Louisiana & Texas Railroad Co., 35 La.Ann. 924 (La.1883), in common law fashion, established a precedent, followed for nearly a century, which allowed acquisition of servitudes by extra-statutory means. In overruling its prior opinion in St. Julien, the court specifically stated that the opinion would not be given retroactive application as a matter of public policy because it would disturb long established practices of utility companies, causing expense and inconvenience to thousands of their customers.
In Stafford v. Division of Administration, 407 So.2d 87 (La.App. 1st Cir.1981), another case cited by the defendant-appellants, this court declined to give retroactive application to a Supreme Court decision. Here the plaintiff was an employee of the defendant. Her employment was terminated when the defendant closed the office wherein she was employed, at which time the Division of Administration was not considered part of the Civil Service Department. More than a year later, the Supreme Court held that employees of the Division of Administration are Civil Service employees, in Smith v. Division of Administration, 362 So.2d 1101 (La.1978), overruling prior jurisprudence. Our court held that Smith v. Division of Administration should not be applied retroactively because to do so would open the courts for a flood of litigation which would have far reaching *431 effects and be very costly to the Division of Administration, the Civil Service Commission, and many former employees of the Division of Administration, because of previous difference in pay scales.
In reaching our holding in Stafford, we cited Lovell v. Lovell, 378 So.2d 418 (La. 1979), another case relied upon by the defendant-appellants. In Lovell, the plaintiff was awarded alimony under La.C.C. art. 160 as it was written in 1975. When the plaintiff sued for an increase in alimony, the defendant answered that La.C.C. art. 160, as written in 1975, was unconstitutional because it allowed alimony for needy wives, but not for needy husbands. The Supreme Court held that, although La.C.C. art. 160, prior to the 1979 amendment rewriting the article with sex neutral language, was unconstitutional according to Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979)[1], and the Orr decision overruled Loyacano v. Loyacano, 358 So.2d 304 (La.1978), the unconstitutionality of La.C.C. art. 160 should not be applied retroactively to vacate a judgment rendered in 1975. The court reasoned that to apply the Orr decision to judgments rendered prior to the 1979 amendment to La. C.C. art. 160 would open the courts to a flood of litigation which would likely reach the same resolution under La.C.C. art. 160 as amended with sex neutral language. Furthermore, because the legislature amended the article to conform to the United States Supreme Court ruling in Orr, to apply the Orr decision retroactively would be contrary to legislative intent.
In Lake, Inc. and Lovell our Supreme Court specifically stated that the holdings of these decisions would only be applied prospectively. Significantly, when writing for the court in First Guaranty Bank, Justice Dennis did not state that the decision should only have prospective application. The concerns expressed in the reasoning of Lovell, Stafford v. Division of Administration, and Lake Inc., namely a flood of litigation and expense and inequity to thousands of citizens, will not arise with retroactive application of First Guaranty Bank; because any creditor whose deficiency rights were lost under the doctrine of League Central would be barred by the principle of res judicata from pursuing their debtors. Thus, the cases decided during the twenty years of League Central doctrine would remain undisturbed.
The court, in Lovell, set forth the following criteria:
In determining whether or not our decision should be given retroactive effect, three factors should be considered: (1) the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the merits and demerits must be weighed in each case by looking into the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation; and (3) the inequity imposed by retroactive application must be weighed. [Citations omitted].
Lovell, supra, at 421.
Admittedly, the First Guaranty Bank decision overrules a past precedent established and followed; however, the history of the rule established by League Central is characterized by a departure from statutory provisions, the traditional Louisiana civilian approach. Retroactive application, insofar as actions in which a final judgment has not yet been rendered, would further the purpose of the First Guaranty Bank decision in that it would bring the course of current litigation closer to the statutory provisions regarding executory process foreclosures and deficiency judgment actions.
The defendant-appellants assert that they will be deprived of a “vested right” if the First Guaranty Bank decision is applied to the captioned action because the events leading to the issues presently before the court occurred prior to May 23, 1988. The “vested right” claimed by the *432 defendants is apparently the opportunity to raise the artificial defenses to deficiency actions afforded by League Central and its progeny. However, on rehearing, the Supreme Court held that these defenses were not a “vested right” of Baton Rouge Petroleum Center in First Guaranty Bank. In its reasoning in First Guaranty Bank, quoted above, the court observed that under League Central, the anomalous situation existed whereby the defendant debtor who did not exercise his defenses to exec-utory process actually improved his position, something never intended by our co-dal provisions. Further, the debtor is not deprived of such defenses under First Guaranty Bank, but he is required to raise them as the Code of Civil Procedure provides, by injunction or by appeal from the order of seizure and sale.
On March 30, 1988, the Second Circuit Court of Appeal followed League Central by holding that the creditor was barred from collecting a deficiency judgment because of a missing link in the chain of authentic evidence in Bank of Coushatta v. King, 522 So.2d 1328 (La.App. 2d Cir.1988), writ granted, 531 So.2d 463 (La.1988). In granting the writ on October 7, 1988, the Supreme Court stated:
The judgment of the court of appeal is set aside. The case is remanded to the court of appeal for reconsideration in the light of First Guaranty Bank v. Baton Rouge Petroleum Center, 529 So.2d 834 (La.1987).
Apparently, the Supreme Court intends that First Guaranty Bank be applied retroactively even in current litigation in which a final judgment has not been rendered.
On November 16, 1988, the Fifth Circuit Court of Appeal gave retroactive application to First Guaranty Bank.
Regarding the issue that the accompanying affidavit in support of the request for executory process failed to meet the lawful required standards, we have been given guidance by a recent Supreme Court decision, First Guaranty Bank of Hammond, Louisiana v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La.1987), which held that a defense to a sustantive [sic] defect in the executory process is lost if it is not raised prior to the sale of the property. Consequently, Calhoun’s appellate attack regarding sufficiency of First NBC’s executory process relates to a sustantive [sic] defect of said process, thus becomes moot.
First National Bank of Commerce v. Calhoun, 534 So.2d 520, 521 (La.App. 5th Cir. 1988).
The trial court, according to the Supreme Court directive in Bank of Coushatta and First National Bank of Commerce v. Calhoun correctly declined to dismiss the plaintiff’s petition for deficiency judgment on the basis of an alleged insufficiency of authentic evidence. Such ruling is consistent with current jurisprudence.
Deciding to retroactively apply the First Guaranty decision, the Gelpi’s remaining assignments of error become moot.
After a thorough review and evaluation of the record, we affirm for the foregoing reasons. Costs are to be paid by appellants.
AFFIRMED.

. In keeping with the Orr decision, the case of Loycano v. Loycano, 358 So.2d 304 (La.1978), was vacated at 440 U.S. 952, 99 S.Ct. 1488, 59 L.Ed.2d 766.