THE CITIZENS BANK OF LOUISIANA *v.* JOSEPH W. TUCKER
Testamentary Executor of Abner Robinson, deceased.

The stipulations in a contract of sale, by authentic act, cannot, between the parties or their representatives, be destroyed or weakened by parol evidence. Nothing but a counter-letter can have that effect.

Where, for the convenience of the vendors, in order to enable them to divide the price among themselves, the notes originally given by the vendees, are cancelled, and others executed in their place, each for smaller sums, but in the aggregate for the same amount, in the same form, and payable at the same periods, nothing being changed as to the position or obligations of the purchasers, there is no novation.

The ratification of an act cures all its defects ; and a voluntary execution thereof, amounts to a ratification. C. C. 2252.

The Citizens Bank of Louisiana v. Tucker, Executor.

APPEAL from the Court of Probates of Lafourche Interior, *McAllister*, J.

*L. Janin*, for the plaintiffs.

*J. C. Beatty*, for the appellant.

SIMON, J. This is one of four suits instituted by different plaintiffs, against the testamentary executor of Abner Robinson, deceased. They arose out of one and the same transaction, and present the same cause of action, originating from the same circumstances.

The succession of Robinson is sought to be made liable for the payment of certain notes of hand, which were executed under the following circumstances : The Citizens Bank of Louisiana had a mortgage upon a plantation and slaves, owned jointly by Robert Bell and Thomas Barrett, in the parish of Iberville, to secure the sum of $50,000, due to the Bank by the owners of the property. It appears that Bell and Barrett had concluded to sell the property mortgaged, to G. A. Botts and A. Robinson, and that some difficulty was found in making them a title thereto, as several judicial mortgages had been inscribed against the vendors. For the purpose of securing a title, it was arranged that the property should be sold by the Citizens Bank under its mortgage ; that Botts and Robinson should bid for it $75,000 ; that the Bank should afterwards allow time for the payment of .the amount of its claim ; and that notes should be furnished for the sum of $75,000, bearing eight per cent interest from date, of which $50,000 should go to the Bank, and the balance to Bell and Barrett, after deducting the expenses incurred by the Bank. Accordingly, Robinson, who could not personally attend, gave to G. A. Botts a notarial power of attorney, dated the 16th of August, 1839, to represent him in the purchase to be made in their joint names, and on their joint account, authorizing his said attorney, " to subscribe and accept all such deed, or deeds, of sale as may be expedient and necessary ; also to make and subscribe in his name, and jointly with him, the said attorney, all such joint obligations, promissory notes, or bonds, and deed or deeds of mortgage, as may be required by the Citizens Bank ; to subscribe also, if necessary, in payment of said purchase, notes to the order of the said constituent, and to endorse the said notes in the name of the said constituent, and to

bind him, the said constituent, thereby, *in solido*, with him, the said attorney, as firmly to all intents and purposes as he, the said constituent, might do, if personally present." The Citizens Bank became subsequently the nominal purchaser of the property, and an act of sale from the Bank to Botts and Robinson was executed on the 31st of January, 1840, in which Botts appeared for himself, and as Robinson's attorney in fact; in consideration of which, Botts signed the notes sued on in his double capacity, in the form of joint and several notes of the two purchasers, payable to the order of G. A. Botts, by whom they were endorsed; and the Bank having taken out of these notes the amount of $50,000, secured by a first mortgage, the balance, secured by a second mortgage, was kept by the Bank to be delivered to Bell and to Barrett's assignee.

Some time afterwards, it was thought necessary to divide each of the notes which were to be given to Bell and Barrett, so as to enable them to hold each his own share respectively. A new act was passed accordingly, and the notes reserved for Bell and Barrett having been cancelled, others were given in their place, of the same form and tenor. This was done by an act passed on the 7th of April, 1840, in which Botts appeared and acted for his copurchaser, Robinson.

Payments having been made on the price of this property, to an inconsiderable amount, all the remaining notes, held by the plaintiffs in the four suits, which were consolidated in the court below, form the subject of this controversy.

The grounds of defence set up by Robinson's executor, sued as one of the joint and several debtors, consist in the allegations : 1st. That the deceased had no interest in the transactions on which this suit is brought, having become a purchaser with Botts only for the accommodation of the latter, who was in reality the sole purchaser, to the knowledge of the plaintiffs; and that the Bank made a novation of the debt by a subsequent act, and granted time to Botts, &c. 2d. That Botts had no authority to bind the deceased in the manner in which he did, and that the notes sued on were not given in conformity with Robinson's power of attorney; and 3d. That the acts of Botts never were in any manner ratified by the deceased, but that he only transferred to the former,

in accordance with the original understanding between them, his apparent title to the one-half of the property, &c.

Judgment was rendered below in favor of the plaintiff for the amount sued for, and the defendant has appealed.

In addition to the facts and circumstances above set forth, the record discloses the following facts : Botts having sold to Bell, by a notarial act, passed on the 12th of February, 1840, fifty-five slaves acquired from the Citizens Bank. Robinson, by another authentic act, executed on the 15th of September following, confirmed and ratified the said sale, recognizing therein, that said slaves *had been acquired by Botts and Robinson jointly*, by the sale from the Citizens Bank, and that he, said Robinson, *was, at the time of the sale to Bell, the owner of one undivided half of said slaves.* By another notarial act, passed on the 18th of September, 1840, Robinson sold to Botts his half of the entire purchase made from the Bank on the 31st of January preceding, with reference to the two acts of the 31st of January and 7th of April, setting forth therein the mortgages thereby granted and *the notes therewith identified*, and stipulating, that said Botts " assumes and promises to pay the one-half of six certain promissory notes, *drawn by him and Abner Robinson jointly and in solido*, and also assumes and promises to pay the one-half of thirteen promissory notes, *drawn by him and Abner Robinson jointly and in solido*, to the order of, and endorsed by said Botts, &c.;" and acknowledging, that the property therein conveyed, was the same which had been purchased by them jointly from the Citizens Bank, for the sum of $75,000, in consequence of his power of attorney, through the agency of Botts, &c.

With this evidence before us, the questions in controversy should perhaps be reduced to a single point, that of ratification ; but we think proper to examine the grounds of defence, in the order they are set up in the answer.

I. The object of the power of attorney given by Robinson to Botts, was clearly the purchase of the property for which the notes sued on were given. This is explicitly stated in the act. No restriction is put, as to this object, on the powers given to Botts. He is authorized to purchase the property from the Citizens Bank, or from Bell and Barrett, in the name of, and jointly

with his constituent; and nothing shows that the sale was a mere sham transaction on the part of Robinson. It is true that Botts' evidence, taken in this case, goes to show, that Robinson only lent his name to enable Botts to make the purchase on his own account; and he states that the Bank was aware of this circumstance. But without pronouncing any opinion on the legality and admissibility of Botts' testimony, to which an exception was taken, we think it cannot have the effect of destroying or weakening the obligations contracted by Robinson towards the plaintiffs. It is the testimony of only one witness, intended to prove a different contract or obligation; and we are not prepared to say, that it should be entitled to any weight against the stipulations contained in a written contract. Nothing can destroy those stipulations but a counter-letter, which it was the duty of the parties to have procured at the time of the sale. 3 Rob. 452. As to the alleged novation by the act of the 7th of April, we think it was sufficiently authorized under the power of attorney. This second act was a continuation of the transaction. The new notes were given for the same consideration, payable at the same time; and nothing was changed in the position and obligations of the purchasers, but by a subdivision of their notes for the convenience of the vendors. This did not create a novation.

II. From the foregoing recitals of the powers given by Robinson to Botts, with regard to the execution of the notes, it is perhaps doubtful as to the form in which the obligation was to be contracted in the name of the constituent. He speaks of joint obligations, of promissory notes, and of bonds. He authorizes his attorney to subscribe notes to the order of his constituent, and to endorse them in the name of the latter; but certain it is, in our opinion, that the implied, and even expressed intention of Robinson was, that his attorney in fact should have the power of binding his constituent, *in solido*, with himself, firmly, and to all intents and purposes. It seems to us manifest, that the procuration authorizes the attorney to create a joint and several responsibility, to secure the payment of the price or consideration of the joint purchase, and that, whatever be the form of the obligation, the deceased became bound as he originally intended to be, to wit, *in solido*, with his co-purchaser and attorney in fact.

III. But should any doubt exist as to the extent of Robinson's obligation, the acts by him passed on the 15th and 18th of September, 1840, in the latter of which he refers to the notes given and subscribed in his name by his attorney, must be considered as a sufficient confirmation and ratification of the acts of the latter performed in the execution of the procuration. The acts of the 15th and 18th of September, not only recognize the purchase in positive terms, but also refer to the promissory notes, as having been drawn by Botts and Robinson jointly and *in solido*. They are recited in the acts as having been executed by virtue of the power of attorney, in consideration of the joint purchase. Having thus been confirmed, ratified, and approved by the deceased, who knew of their existence, and who is not shown to have ever complained of the acts of his co-obligor, it does not lie in the mouth of his representative to say that his testator is not bound to comply with his obligations. The ratification of an act cures all its defects; and a voluntary execution thereof amounts to a ratification. Civil Code, arts. 2252. 2 Rob. 2.

*Judgment affirmed.*