187 So. 281

## BLAPPERT v. SUCCESSION OF WELSCH.

No. 35043.

Feb. 6, 1939.

Yarrut & Stich, of New Orleans, for appellant.

George A. Dreyfous, of New Orleans, for appellee.

PONDER, Justice.

On July 22, 1925 Leopold Welsch executed a promissory note in favor of Mrs. Rosalie M. Loeb in the sum of $10,000, payable one year from date and calling for interest at the rate of 6½% per annum.

This note was secured by a mortgage on a certain piece of property in square 30 facing Chartres St. in the City of New Orleans. On August 6, 1928 Leopold Welsch and Elliot Finkelstein executed a promissory note for the sum of $5,000 to Frank B. Twomey payable one year from date and calling for interest at the rate of 7% per annum until paid. This note was secured by a mortgage on property situated on South Claiborne Avenue. On January 2, 1931 Elliot Finkelstein sold his interest in this property to Leopold Welsch. In the deed transferring the property, Leopold Welsch assumed the payment of the mortgage note executed by himself and Elliot Finkelstein. Philip A. Blappert became the holder and owner in due course and is the present owner and holder of the note executed by Leopold Welsch and Elliot Finkelstein for the sum of $5,000, secured by the mortgage on the South Claiborne Avenue property. Payments have been made on this note reducing the note to $1,700. All interest has been paid on the note up to August 10, 1937 at which time Leopold Welsch acknowledged the debt and waived prescription. On September 30, 1932 Leopold Welsch executed a promissory note for $10,776 to Mrs. Rosalie M. Loeb payable in installments of one, two, three, four and five years from date, calling for interest at the rate of 6½% per annum. This note was secured by a mortgage on the Chartres Street property and another piece of property.

On October 7, 1937 Leopold Welsch died intestate in the City of New Orleans and his succession was duly opened. On February 22, 1938 Philip A. Blappert fore-closed on the property on South Claiborne Avenue by executory process. The administrator, Jacob J. Welsch, of the succession of Leopold Welsch filed an intervention and third opposition setting forth that the succession of Leopold Welsch was insolvent; that there were certain privileged debts, funeral debts, debts of last illness and administrative debts, that had to be paid; and that such debts had privilege and priority to the proceeds of the foreclosure over the mortgage creditor. Lee H. Gamsu filed an intervention and third opposition alleging that he was the owner and holder in due course of the promissory note executed to Mrs. Loeb and secured by the mortgage of date, September 30, 1932 on the Chartres Street property and another piece of property; alleging that he is a creditor of the succession of Leopold Welsch; that he instituted foreclosure proceedings on his mortgage which did not at the sale of the property bring sufficient to satisfy his claim; that the administrator of the succession of Leopold Welsch intervened and set up privileged claims which the administrator claimed were entitled to preference; that in event the claims of the administrator are privileged over the mortgage claims that they should be charged against the proceeds of the mortgage foreclosed on by Philip A. Blappert before any charge is made against the proceeds of the foreclosure sale in the foreclosure by Gamsu on his mortgage; that the mortgage executed by Leopold Welsch to Mrs. Loeb of date July 22, 1925 having been in arrears and long past due and increasing in amount, due to the accumulation of taxes and interests, in or-

der to avoid foreclosure and extend the same Leopold Welsch agreed to secure the mortgage with an additional piece of real estate, to accomplish which the old note was cancelled and a new one executed on September 30, 1932 in the amount of $10,776 to include accrued interest and taxes; that accordingly intervenor's mortgage was in truth and in fact executed on July 22, 1925, whereas the mortgage of Blappert was executed on August 6, 1928; and that copies of the acts of mortgages will be produced and filed on the trial hereof. The intervenor prayed that the privileged debts of the succession be charged first to the proceeds of the mortgage held by Philip A. Blappert, until such privileges are satisfied or such proceeds exhausted before the privileged debts of the succession are charged to the proceeds of the foreclosure of intervenor's mortgage. It appears that copies of all the mortgages in dispute herein were filed in the record. The plaintiff interposed an exception of no cause or right of action to the intervention and third opposition of L. H. Gamsu. The court maintained the exception of no cause or right of action and the intervenor has appealed.

In their briefs and in their argument before this Court the counsel for both of the mortgage creditors admit the priority of the succession debts but each contends that his mortgage is the most ancient and that the privileged succession

debts should be paid out of the proceeds of the mortgage of the other.

It is admitted that the payment of these privileged succession debts are to be borne by the creditor whose mortgage is least ancient under the provisions of Article 3269, R.C.C.

The record discloses that the mortgage in favor of Mrs. Loeb of July 22, 1925 was given only on the Chartres St. property while the mortgage given Mrs. Loeb of date September 30, 1932 was given on the Chartres Street property and another piece of property. In the mortgage of September 30, 1932 it was recited that the mortgage certificate showed that there was a mortgage on the Chartres Street property in favor of Mrs. Loeb of date July 22, 1925 and that such mortgage was handed to the notary for cancellation forthwith. Within a few days thereafter, the notary in compliance with the stipulation of the parties secured the cancellation and erasure of the mortgage of date July 22, 1925 from the mortgage records.

The appellant contends that the mortgage of September 30, 1932 was given in renewal of the mortgage of July 22, 1925. The appellant urges that it was the intention of the parties to renew the mortgage. In support of this contention the appellant cites Articles 2185 to 2190, R.C.C., inclusive. These Articles deal with novation. The appellant cites Rosenda v. Zabriskie, 4 Rob. 493; Citizens' Bank v. Tucker, 6 Rob. 443; 46 Corpus Juris, p. 594, sec. 35; 46 Corpus Juris, p. 591, sec. 33; Coco v. Lacour, 4 La. 507, and Phillips v.

Gillaspie, La.App., 176 So. 647, 653. We have examined the authorities cited and find that they are not pertinent to the issues herein. The parties themselves have expressly stipulated in the mortgage of September 30, 1932 for the cancellation and erasure of the mortgage of July 22, 1925. There is absolutely nothing in this act of mortgage which would even suggest that it was the intention of the parties that the mortgage was given to renew the prior mortgage. On the other hand the parties themselves stipulate that the mortgage shall be cancelled forthwith. It is well settled in this State that a mortgage is strictly construed. The mortgage only takes place in such instances as are authorized by law. A mortgage is accessory to the principal obligation which it is given to secure. Under the Civil Code there are three kinds of mortgages, one of which is the conventional mortgage, Articles 3286, 3287 and 3290, R.C.C. The Code provides the method of executing the mortgage and that it must be recorded, Article 3342. Under the provisions of Article 3329, among creditors the mortgage has force only from the time of recordation. The Code provides the manner of recordation. Under the provisions of Article 3342 the mortgage could only prejudice third persons when it had been publicly inscribed on the records in the directed manner. The Code provides the method of renewing a mortgage by reinscription, Article 3369. The appellant has not renewed the mortgage in the manner provided for by the Civil Code. The Civil Code provides the manner of cancelling and erasing mortgages from the mortgage records, one of which methods is, viz.: Article 3371, "Inscriptions of mortgages and privileges are erased by the consent of the parties interested and having capacity for that purpose; this consent to be evidenced by a release, or by a receipt given on the records of the court rendering the judgment on which the mortgage is founded." When the parties stipulated that the prior mortgage was turned over to the notary to be cancelled and erased forthwith they came squarely under the provisions of Article 3371, R.C.C. The notary complied with the stipulation and secured the erasure and cancellation of the mortgage. From the plain and unambiguous language used by the parties in the authentic act of mortgage providing that the prior mortgage be cancelled and erased, it clearly shows it was the intention of the parties to cancel the mortgage. There is no language in the mortgage of September 30, 1932 that would give the slightest suggestion that it was the intention of the parties to renew the mortgage but on the other hand they expressly provide for the cancellation of it. Moreover, the subsequent mortgage covers additional property to that covered by the prior mortgage and could not be considered a renewal of the prior mortgage.

For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.