(833 P.2d 138)

No. 67,133

GARST SEED COMPANY, *Appellant,* v. ROBERT D. WILSON, a/k/a
BOB WILSON; COLLINGWOOD GRAIN, INC.; SOUTHWEST KANSAS
NATIONAL BANK; and LOREN PUYEAR, *Appellees.*

Opinion filed June 12, 1992.

*Daniel H. Diepenbrock,* of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, for appellant.

*J. Douglas Miller,* of Liberal, for appellee Southwest Kansas National Bank.

*L. LaVerne Fiss,* of Fiss & Black, of Johnson, for appellee Loren Puyear.

*K. Mike Kimball,* of Hathaway, Kimball and Campbell, of Ulysses, for appellee Collingwood Grain, Inc.

Before BRAZIL, P.J., ELLIOTT and PIERRON, JJ.

ELLIOTT, J.: Garst Seed Company (Garst) appeals the trial court's decision that its security interest in a corn crop was not properly perfected because the real estate description in the security agreement was not sufficient.

We affirm.

The facts are essentially uncontroverted.

Bob Wilson was a tenant farmer in Stanton County, leasing land from three sources: Loren Puyear, the Joe Montgomery Estate, and the Beckett Estate. Beginning in 1987, Collingwood Grain, Inc., (Collingwood) provided supplier financing for input items (fertilizer, fuel, chemicals, etc.), secured by perfected security interests in Wilson's 1988 and 1989 growing crops.

Despite Collingwood's help, Wilson experienced financial difficulties. In March of 1988, rather than filing bankruptcy, he entered into a workout agreement with Collingwood, Puyear, and Southwest Kansas National Bank (Bank).

Under the agreement, Puyear agreed to be the "white knight," supplying Wilson with additional capital. Puyear took a security interest in Wilson's crop and assigned this interest to Bank.

On April 12, 1989, Wilson purchased seed corn from Garst. The seed corn was not purchased with Puyear funds, but was to be paid for from the 1989 crop proceeds. Wilson signed a promissory note for $27,000, a security agreement, and a financing statement.

The validity of the security agreement is at issue in the present case.

In July 1989, Puyear terminated his lease with Wilson and the workout agreement was also terminated. On August 4, 1989, Garst filed the financing statement Wilson had signed in April. In November, Collingwood, Puyear, and the Bank divided the proceeds from Wilson's 1989 crop in accordance with their prior agreement. Garst then filed the present suit, and Wilson filed for bankruptcy.

The trial court granted defendants' motions for summary judgment, ruling that the land description in Garst's security agreement was insufficient.

On appeal, no one claims the case was not ripe for summary adjudication; and we must read the record in a light most favorable to the party who defended against the motion. See *Patterson v. Brouhard*, 246 Kan. 700, 702, 792 P.2d 983 (1990).

Garst's security agreement consisted of a printed form. Paragraph 2 provided:

"2. This agreement includes annual and perennial crops and products thereof growing or planted on the following described real property;

either before or after harvest and all additions and substitutions therefor including the proceeds thereof; and such property is and will be located on the following described property in <u>Stanton</u> County, <u>Kansas</u>;
  [space left blank]
  "A. Landowner: If other than Debtor, the record owner of the land above.described is <u>Loren Puyear</u>."

The financing statement described the real estate as follows:

  "Stanton County, Kansas NW ¼ 15-28-40, SE ¼ 34-28-40, NW ¼ 14-28-40, SW ¼ 23-28-40, S ½ 22-28-40, NE ¼ 3-29-40, All 27-28-40."

Garst contends that although the security agreement does not give a full description of the land on which the corn crop was growing, it is sufficient to perfect its security interest when combined with the real estate description contained in the financing statement. We disagree.

The Uniform Commercial Code provides that a security interest in growing crops is not enforceable against the debtor and does not attach unless the *security agreement* contains a "description of the land concerned." K.S.A. 1991 Supp. 84-9-203(1). Similarly, the financing statement must contain a "description of the real estate concerned." K.S.A. 84-9-402(1). A real estate description need not be a full legal description, but is sufficient if it "reasonably identifies what is described." K.S.A. 84-9-110.

Most of the case law applying the "reasonable identification" test concerns financing statements. In general, a financing statement land description is sufficient if it contains the name of the landowner, the approximate number of acres involved, the county in which the land is located, and the approximate distance and direction of the farm from the nearest town. *E.g., United States v. Collingwood Grain, Inc.*, 792 F.2d 972, 974-75 (10th Cir. 1986). See *Chanute Production Credit Ass'n v. Weir Grain & Supply, Inc.*, 210 Kan. 181, 499 P.2d 517 (1972).

While the function of a real estate description in a security agreement is to *grant* a security interest, the criteria for sufficiency appear to be comparable. See *U.S. v. Smoky Valley Bean, Inc.*, 673 F. Supp. 1551 (D. Kan. 1987).

In the present case, the real estate description in Garst's security agreement does not meet the reasonable identification test. It gives only a county-wide location, leaves the description portion of the farm totally blank, and lists only one of Wilson's landlords.

A third party could not identify the land on which the corn crop was growing without further information.

The description in Garst's financing statement would probably pass the reasonable identification test, but it cannot cure the defect in the security agreement. A security interest cannot be perfected until it attaches. K.S.A. 84-9-303. And a security interest cannot attach until the requirements of 84-9-203 are met. See *In re Newman*, 71 Bankr. 698, 699 (Bankr. D. Kan. 1987) (valid security agreement must contain words of grant); *First Nat'l Bank of Gaylord v. Autrey*, 9 Kan. App. 2d 96, 98, 673 P.2d 448 (1983). We have found no authority for merging the two separate documents in order to satisfy the requirements of 84-9-203. Garst's security interest in Wilson's crops simply never attached. See *C&H Farm Service v. Farmers Sav. Bank*, 449 N.W.2d 866, 868-69 (Iowa 1989).

The trial court did not err in holding that Garst does not have an enforceable security interest in Wilson's 1989 corn crop.

Garst also argues that defendants' conduct should affect the priorities established by K.S.A. 1991 Supp. 84-9-312 and/or should grant Garst an equitable lien in Wilson's 1989 corn crop.

The parties do not dispute that defendants had a perfected security interest in the 1989 crop and a contractual agreement to divide the proceeds of the crop among themselves. And while 84-9-312 sets priorities among conflicting security interests in the same collateral, because Garst did not have an enforceable security interest, there can be no conflict and the statute does not apply.

With respect to Garst's argument for an equitable lien on the proceeds of Wilson's 1989 corn crop, the Official UCC Comment to K.S.A. 84-9-203 specifically rejects the theory of equitable liens. Informal security agreements may have been necessary in the past given the elaborate requirements of 19th century chattel mortgages. But since article 9 reduces formal requirements to a minimum, the "ancient learning" is no longer necessary. "More harm than good would result from allowing creditors to establish a secured status by parol evidence after they have neglected the simple formality of obtaining a signed writing."

Garst failed to comply with the plain mandates of the UCC and, thus, is not a secured party. Garst is simply an unsecured

creditor, entitled after proper judgment to enforce its claim against Wilson, assuming the debt has not been discharged in Wilson's bankruptcy.

Defendants, on the other hand, complied with the Uniform Commercial Code and are properly perfected secured parties. Accordingly, they should be permitted to reap the priority benefits provided by article 9 of the Code.

Affirmed.