767 So.2d 137 (2000)
AGRICREDIT ACCEPTANCE COMPANY, Plaintiff-Appellant,
v.
Jack F. SINGLETON, AJA Farms, Inc., Agra Trade Financing, Inc., and Gold Kist, Inc., Defendants-Appellees.
No. 33,661-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
*138 Hudson, Potts & Bernstein by James A. Rountree, Monroe, Counsel for Plaintiff-Appellant.
Stafford, Stewart & Potter by Gary B. Tillman and Warren D. Willett, Alexandria, Counsel for Defendants-Appellees.
Before NORRIS, C.J., BROWN and KOSTELKA, JJ.
NORRIS, Chief Judge.
Agricredit Acceptance Corp. filed this suit to rank security interests between itself and the defendants, Agra Trade Financing Inc. and Gold Kist Inc., and to disburse funds in accordance with the ranking. The District Court granted summary judgment in favor of Agra Trade, finding it had a prior perfected security interest and was entitled to the proceeds of the debtor's property. Agricredit has appealed; for the reasons expressed, we amend to grant a partial summary judgment and remand for further proceedings.

Factual background
The debtor, Jack Singleton, did business as AJA Farms Inc. and raised cotton, sorghum and wheat on several farms in Central Louisiana. In preparation for the 1997 crop, he borrowed $554,740 from Gold Kist and Agra Trade.[1] The parties executed a security agreement on November 19, 1996, in which the collateral is listed as "All crops now growing and hereafter to be planted or otherwise to become growing crops on the lands described below: * * * All crops outlined in Exhibit `A' attached to UCC-1F." The financing statement (UCC-1F), filed in Richland Parish on December 6, 1996, includes an Exhibit "A" which lists seven tracts of land by parish, acreage, owner, section, township and range.
Later, in April 1997, Singleton borrowed $150,000 from Agricredit. These parties executed an agricultural security agreement on April 29, 1997, describing the collateral as "cotton and other agricultural products * * * harvested in the year 1997 * * * in Pointe Coupee Parish, commonly known as Kingsbury Plantation located east of Highway 15." This is one of the tracts described in the Agra Trade UCC-1F. Agricredit filed a financing statement in Ouachita Parish on July 25, 1997, with an attachment bearing the same property description as in the security agreement.
Singleton defaulted and, according to this record, has become an absentee. Alleging that it had obtained a check for $228,993, essentially the proceeds of Singleton's 1997 farming operations, Agricredit filed the instant suit in April 1998 to place this money in the court registry. Agricredit further alleged that it was due $129,408 plus interest on its April 1997 note and agricultural security agreement. The petition acknowledged that Agra Trade had filed an earlier financing statement, but alleged that this security interest was defective because no property description was contained in the security agreement. The petition named Agra Trade as a defendant and demanded (1) a ranking of security interests and (2) a disbursal of the funds in accordance with the ranking.
Agra Trade moved for summary judgment, urging that its security interest substantially complied with Louisiana's version *139 of the UCC, R.S. 10:9-203. In an affidavit of balance due, Don Woods, who is "in charge of servicing this loan and is personally familiar with the loan file," swore that principal and interest as of February 15, 1999 totaled $710,252.
Agricredit then filed its own motion for summary judgment, reiterating that Agra Trade's security agreement was defective; in support, it argued that security devices derogate from the general rights of creditors and must be strictly construed. Agricredit attached a certified copy of a federal default judgment it obtained against Singleton for $129,408. At the hearing on the motions, Agricredit also argued that Agra Trade's affidavit of balance due did not sufficiently identify the account as Singleton's.
After the hearing, the District Court ruled that although the issue was close, R.S. 10:9-203 did not require the collateral description to be in one document, as long as the collateral "can be discerned and properly and reliably identified by documents referenced." The court concluded that Agra Trade's security interest was "sufficiently substantial compliance to perfect the agreement." The court therefore granted Agra Trade's motion for summary judgment and directed that the funds in the court registry be paid to Agra Trade.
Agricredit has appealed, advancing three assignments of error.

Applicable law
Louisiana's Secured Transactions Law, R.S. 10:9-101 et seq., was enacted by Acts 1988, No. 528, effective January 1, 1990. It represents a substantial adoption of the Uniform Commercial Code Article 9 and is intended to supersede prior legislation dealing with security devices, chattel mortgages and related matters. See R.S. 10:9-101, 1972 UCC Comment; Ford Motor Credit Co. v. Melancon, 95-1221 (La.App. 3 Cir. 6/19/96), 677 So.2d 145. The provision for security affecting crops, R.S. 10:9-203(1)(a), was added by Acts 1995, No. 884, effective January 1, 1996. As this provision is recent, the construction of 9-203(1)(a) appears to be res nova in Louisiana. However, the jurisprudence of other states which have enacted the UCC is relevant. See Cromwell v. Commerce & Energy Bank of Lafayette, 464 So.2d 721, 40 UCC Rep. Serv. 1814 (La.1985).
For a creditor to have maximum security rights, a security agreement must be created (or "attached") and perfected. Attachment is regulated by R.S. 10:9-203(1), which provides in pertinent part:
§ 9-203 Attachment and enforceability of of security interest; proceeds; formal requisites
(1) Subject to the provisions [regarding collecting banks, investment securities and sales, not at issue in this case], a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
(a) the collateral is in the possession of the secured party pursuant to agreement, * * * or the debtor has signed a security agreement which contains a description of the collateral and, in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned;

(b) value has been given; and
(c) the debtor has rights in the collateral.
Once attached, a security interest is perfected by the filing of a financing statement, such as the UCC-1F. R.S. 10:9-302. The financing statement must also contain a description of the collateral. R.S. 10:9-402(1). For purposes of the secured transactions law, any description of personal property is sufficient whether or not it is specific if it reasonably identifies what is described. R.S. 10:9-110. The same test of reasonable identification applies when a description of real estate is required. Id., 1972 UCC Comment. In general, the proper place to file a financing statement is with the clerk of court of any *140 parish, who is designated the "filing officer." R.S. 10:9-401(1)(b). However, the statute also creates a dual filing system that is both local and statewide; all filing officers must transmit the information contained in the financing statements to the Secretary of State for inclusion in a master index. R.S. 10:9-403(4). Upon the request of any person, a filing officer shall issue his certificate showing the existence in the master index of any financing statement naming a secured party. R.S. 10:9-407(2).
Louisiana's version of the UCC is to be liberally construed and applied to promote its purposes and policies, which are to simplify, clarify and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and to promote uniformity of the law among the various jurisdictions. R.S. 10:1-102(1), (2); Cromwell v. Commerce & Energy Bank, supra.

Discussion: R.S. 10:9-203
By its first and third assignments of error Agricredit urges the District Court committed legal error by failing to strictly construe R.S. 10:9-203. Specifically, it contends that when the security property is crops, the security agreement must contain a description of the land concerned. Since Agra Trade's security agreement did not contain a property description, Agricredit argues, no security attached. Agricredit concedes that Agra Trade's financing statement, which was properly filed, included an adequate property description, but could not perfect a security interest which had never attached in the first place.
In support, Agricredit cites jurisprudence holding that a security agreement which omits a property description is deficient, does not meet the "reasonable identification" test of § 9-110, and cannot be rehabilitated by the subsequent filing of a valid financing statement. See, e.g., Garst Seed Co. v. Wilson, 17 Kan.App.2d 130, 833 P.2d 138, 18 U.C.C. Rep. Serv.2d 943 (1992), rev. denied (9/29/92); In Matter of Permian Anchor Services Inc., 649 F.2d 763, 31 U.C.C. Rep. Serv. 356 (10th Cir. 1981); In re Mack, 93 B.R. 695, 8 U.C.C. Rep. Serv.2d 191 (D.N. Dak.1988). In a similar vein, other courts have rejected the "composite document theory," under which the deficiencies of a required document may be supplied by reference to other related documents. See, e.g., In re Kevin W. Emerick Farms Inc., 201 B.R. 790, 31 U.C.C. Rep. Serv.2d 29 (C.D.Ill.1996), and citations therein.
Finally, Agricredit urges that the District Court's liberal construction of 9-302 violated the traditional rule that mortgages and security devices must be strictly construed. Blappert v. Succession of Welsch, 192 La. 173, 187 So. 281 (1939); International Harvester Credit Corp. v. Seale, 509 So.2d 684 (La.App. 3 Cir.1987), rev'd in part on other grounds 518 So.2d 1039 (1988).
In UCC jurisdictions, however, the majority rule is that the security agreement may describe the collateral by reference to another document. In Matter of Nickerson & Nickerson, 452 F.2d 56, 9 U.C.C. Rep. Serv. 1266 (8th Cir.1971), for example, holds that 9-203's requirement of a description of collateral is evidentiary only; if the financing statement adequately describes the collateral, and is attached to the security agreement, this will suffice for the creation of the security interest. In re Moody, 62 B.R. 282, 1 U.C.C. Rep. Serv.2d 923 (N.D.Miss.1986), holds that 9-203(1)(a) states a test of "reasonable identification," and that a collateral description by reference is sufficient to create a legally binding security interest. In re Cantu, 238 B.R. 796, 39 U.C.C. Rep. Serv.2d 879 (8th Cir.1999) specifically rejected the plea for a strict construction of 9-302, finding instead a "flexible definition" of security agreement which includes documents which are incorporated into one another or clarify one another.
*141 Most notably, the case of In re Coones, 954 F.2d 596, 16 U.C.C. Rep. Serv.2d 880 (10th Cir.1992), rev'd on other grounds sub nom. Coones v. FDIC, 506 U.S. 802, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992),[2] involved a security claim on the debtor's crops; this was regulated by the same requirement of a land description as is found in R.S. 10:9-302(1)(a). The security agreement did not describe the land, but referred to the financing statement. The court stated:
A security agreement need not be evidenced by a single document, but may be established through consideration of two or more written documents. * * * It is appropriate to refer to other documents to establish the security interest unless the security agreement is facially complete and does not refer to any other documents. 954 F.2d at 599.
In the instant case, Agra Trade's security agreement specifically refers to an attachment to the UCC-1F. We conclude, with the majority jurisprudence of other states, that this provided reasonable identification, satisfied the requirements of 9-203(1)(a), and caused Agra Trade's security interest to attach. Although the District Court in oral reasons stated that this "perfected" the security interest, he clearly meant "created."
The cases of Garst Seed Co., In Matter of Permian Anchor Services Inc., In re Mack, and In re Kevin Emerick Farms Inc., supra, are distinguished in that the security agreements therein were facially complete, had no property descriptions, and did not incorporate any other documents by reference.[3]
At oral argument, Agricredit suggested that under the circumstances of this case, a complete property description in the security agreement was essential in order to place third parties on notice. Agra Trade had filed its UCC-1F in Richland Parish, while Agricredit later filed its UCC-1F in Ouachita. However, the security agreement serves to create or attach the interest; notice or perfection is achieved by filing the financing statement. When any filing officer receives this, the information is transmitted to the master index, which may later be searched by the filing officer of any parish. R.S. 10:9-403(4); 407(2). Because Agra Trade's financing statement was properly filed, Agricredit's argument based on notice lacks merit.
Finally, we are unpersuaded by the argument that this procedureallowing a security agreement to incorporate a property description by referenceviolates any principles of strict construction of security devices. Cases like Blappert v. Succession of Welsch and International Harvester Cred. Corp. v. Seale, supra, hold that chattel mortgages are limited to the collateral and amount of debt that the parties clearly intended; they did not address the construction of R.S. 10:9-201 et seq. On this record, there is no genuine issue of material fact that Singleton and Agra Trade both intended for the crops on the seven tracts described in the financing statement to serve as collateral. Moreover, the rationale of In re Coones, supra, is consistent with the rule of liberal construction to simplify, clarify and modernize the law of commercial transactions, and to foster the expansion of commercial practices in Louisiana, R.S. 10:1-102(2), thus showing that Agra Trade is entitled, as a matter of law, to judgment ranking its privilege ahead of Agricredit's. These assignments of error lack merit.

Disbursal of assets
By its second assignment of error Agricredit urges that summary judgment was *142 inappropriate because the affidavit and documents attached to Agra Trade's motion were defective. Agricredit advances the general argument that "it appears that most of the papers * * * were unsworn," but specifically contends that the affidavit of account due fails to identify the account and balance due.
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966 B. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606. Summary judgment procedure is favored to secure the just, speedy and inexpensive determination of all except certain disallowed actions. La. C.C.P. art. 966 A(2); Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case. La. C.C.P. art. 966 E; Gaylord Chemical Corp. v. ProPump Inc., 98 2367 (La.App. 1 Cir. 2/18/00), 753 So.2d 349, fn. 4. An appellate court may grant a partial summary judgment. See, e.g., Branscum v. Catherine, 99-3606 (La.2/18/00), 754 So.2d 954; Keller v. Case, 99 0424 (La.App. 1 Cir. 3/31/00), 757 So.2d 920.
Notably, Agricredit does not contend that the security agreements, financing statements and UCC certificates are inaccurate or have been falsified. We find that these documents satisfy the requirements of art. 967; there is no contrary factual support sufficient to establish that Agricredit could rebut them at trial. La. C.C.P. art. 966 C(2). Agra Trade has therefore produced sufficient summary judgment evidence to support a judgment ranking the privileges.
The affidavit of balance due, however, is not sufficient on its face. It states only that Mr. Woods is "in charge of servicing this loan and is personally familiar with the loan file," but does not identify the debtor by name, account number, or docket number of this lawsuit. Further, it recites a principal amount due of $584,628.09, in addition to interest of $125,624.27. The principal amount stated in Agra Trade's note was $554,740; while we may assume the difference in principal is capitalized interest, the discrepancy is simply not explained. These deficiencies leave a genuine issue of material fact, viz., the amount of Singleton's indebtedness to Agra Trade. Hibernia Nat'l Bank v. Boullion, 622 So.2d 1187 (La.App. 2 Cir. 1993); American Security Bank of Ville Platte v. Deshotel, 548 So.2d 377 (La.App. 3 Cir.1989). For these reasons, the summary judgment ordering disbursal of the funds in the court registry will be reversed.

Conclusion
For the reasons expressed, the judgment is amended to enter a partial summary judgment in favor of Agra Trade Financing Inc., declaring that its security interest is superior to that of Agricredit Acceptance Corp. The case is remanded for further proceedings in accord with this opinion. Costs are divided between appellant and appellee.
AMENDED TO ENTER PARTIAL SUMMARY JUDGMENT; CASE REMANDED.
NOTES
[1] Gold Kist by separate instrument assigned its interest in the note and security to Agra Trade, but its name still appears on the appellees' brief.
[2] The reversal was not based on U.C.C. principles but on technical bankruptcy grounds announced in Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).
[3] In fact, a leading commentator has observed of Garst Seed Co. that "this view of the matter may be too strict, particularly in light of fuller description contained within the financing statement." William D. Hawkland, Richard A. Lord, et al., Hawkland Uniform Commercial Code Series (Clark Boardman, 1997), § 9-110:05, fn. 5.